140 N.J. 83 (1995)
657 A.2d 837
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
D.D.M., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
The Supreme Court of New Jersey.
Argued November 29, 1994.
Decided May 4, 1995.
*86 Craig V. Zwillman, Deputy Attorney General, argued the cause for appellant and cross-respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney).
Sara K. Walsh, Designated Counsel, argued the cause for respondent and cross-appellant (Susan L. Reisner, Public Defender, attorney).
The opinion of the Court was delivered by HANDLER, J.
This appeal involves two petitions for post-conviction relief. The petitions relate to sentences on unrelated convictions for sexual offenses against young children committed in different counties. Each petition was determined and denied by the court that imposed the original sentence. Petitioner filed separate appeals from the respective trial court judgments, and the Appellate Division consolidated the appeals. Considering the underlying sentences to be interrelated and believing that one sentence was illegal and that both sentences in combination were unjust, the Appellate Division granted partial relief.
Under the Rules of Court, petitions for post-conviction relief are subject to time and procedural limitations that, if applicable, would foreclose relief. In light of the decision of the Appellate Division, we are asked to determine if defendant is entitled to postconviction relief on grounds of illegality in the imposition of the original sentences or manifest injustice.

I
The petitions for post-conviction relief (sometimes referred to as "PCR") relate to criminal proceedings that originated in Ocean County and Monmouth County almost twenty years ago.
We deal first with the indictments, pleas and sentences.

*87 A.
On June 30, 1977, Ocean County Indictment No. 491-76 charged defendant (also referred to as "petitioner") with willfully committing an act of indecency towards and tending to debauch the morals and manners of D.M., contrary to N.J.S.A. 2A:114-2 (incestuous conduct between parent and child). Specifically, defendant was accused of committing fellatio on his seven-year-old son. On August 10, 1977, defendant entered a plea of not guilty by mail.
On November 1, 1977, defendant entered a retraxit plea of guilty to the Ocean County offense. The "Statement by Defendant," completed and signed by both defendant and his attorney, stated that "the court could impose a sentence of not more than 15 years or a fine of not more than $1,000 or both." The Statement also underscored "[t]he judge is not bound by those promises. If he decides not to follow the recommendations, you will be allowed to take back your guilty plea and plead not guilty."
The transcript of the plea hearing indicates defendant's desire to plead guilty; however, the defendant was reluctant to acknowledge the actual commission of misconduct in accordance with Rule 3:9-2. The court explained the necessity for the defendant to provide a factual basis for the plea. At that point, the county prosecutor requested a side-bar conference, which, contrary to Rule 1:2-2, was neither recorded verbatim nor its substance noted on the record. Following that side-bar conference, the trial court accepted defendant's plea with no further statement by defendant regarding his commission of the alleged act.
Thereafter, the court ordered a presentence report and, in compliance with the Sex Offender Act, N.J.S.A. 2A:164-3, the court requested that an examination be performed by the Adult Diagnostic Center at Avenel ("Avenel").
Before the completion of the Avenel report, defendant was charged, on December 1, 1977, with the commission of sex offenses in Monmouth County. Monmouth County Indictment No. 379-77 *88 charged defendant with feloniously assaulting A.B., a three-year-old girl, with intent to carnally abuse her, contrary to N.J.S.A. 2A:90-2 (count one); with inducing and forcing the girl to do and submit to acts tending to debauch and impair her morals, specifically, placing his tongue in the area of her vagina, and exposing his penis to her, contrary to N.J.S.A. 2A:96-3 (count two); with encouraging, causing, and contributing to the delinquency of the three-year-old girl by performing the acts alleged in count two, contrary to N.J.S.A. 2A:96-4 (count three); and committing an act of lewdness by openly, lewdly, willfully, and unlawfully exposing his penis in the presence of the three-year-old girl, contrary to N.J.S.A. 2A:115-1 (count four).
Thereafter, in Ocean County, Avenel returned its report, which acknowledged that defendant had "a history of a repetitive and compulsive pattern of aberrant sexual behavior," but recommended probation for the Ocean County offense. Subsequently, on February 27, 1978, defendant pled guilty to two of the Monmouth County offenses. As a result, the Ocean County probation officer, on March 9, 1978, supplemented the presentence report with the Monmouth County plea agreement, and recommended that the court commit defendant to the Avenel facility for the Ocean County offense.
On March 13, 1978, Judge Huber of Ocean County sentenced defendant to an indeterminate term at Avenel not to exceed ten years for the Ocean County offense. No transcript of the sentencing hearing survives. Because N.J.S.A. 2A:114-2 mandated a fifteen-year maximum term of imprisonment and State v. Andrews, 105 N.J. Super. 62, 65, 251 A.2d 141 (App.Div. 1969), holds that the statute precludes the court from imposing a maximum term different from the term set by statute, the ten-year sentence was illegal. Defendant therefore was afforded a resentencing hearing.
At the resentencing hearing, on April 10, 1978, defendant urged that he should be resentenced to a probationary term because the treatment he was being afforded at Avenel was inadequate and *89 less intense and productive than the out-patient treatment that he had been receiving prior to his incarceration. Significantly, no argument was made that the plea bargain was contingent on the ten-year sentence originally imposed. Nor was any request or application made by defendant to withdraw his guilty plea. Correcting the illegal sentence in conformity with N.J.S.A. 2A:114-2, Judge Huber resentenced defendant to an indeterminate term at Avenel, not to exceed fifteen years. Defendant filed a Notice of Appeal on April 24, 1978, which was dismissed by the Appellate Division in November 30, 1978.
After entering into the Ocean County plea agreement, but prior to sentencing, defendant decided to plead guilty to the Monmouth County indictment, which he did on February 27, 1978. Pursuant to the "Statement by Defendant," defendant pled to two counts of the indictment, each of which carried a maximum term of three years, and acknowledged that the court could sentence him to a term of not more than six years plus a $2,000 fine. The prosecutor agreed to recommend dismissal of the remaining two counts and the imposition of concurrent sentences. Specifically, according to the Statement, the sentence was to be "concurrent  if not a sex offender." The Statement further indicates that "[t]he judge is not bound by those promises. If he decides not to follow the recommendation, you will be allowed to take back your guilty plea and plead not guilty." There is no indication of whether the term "concurrent" denoted that the sentences contemplated for the Monmouth County offenses were to run concurrently with the sentence to be imposed on the Ocean County offense or whether the term "concurrent" was intended to ensure only that the sentences on each of the two counts of the Monmouth County indictment were to run concurrently with each other.
Again, because the Monmouth County offenses were subject to the Sex Offender Act, Judge Lane ordered that Avenel examine defendant and prepare a report. On May 8, 1978, Avenel submitted its report to Judge Arnone, which recommended that defendant *90 be committed to Avenel. It should be emphasized that at the time of this second examination and report, defendant had been sentenced in Ocean County and was already incarcerated at Avenel for the Ocean County offense.
On May 19, 1978, more than one month after the correction of defendant's Ocean County sentence, Judge Arnone sentenced defendant to concurrent three-year terms on the two Monmouth counts; however, he specified that this sentence was to run consecutively to the Ocean County sentence. In addition, prior to sentencing, defendant and his attorney acknowledged reading an informational statement that notified defendant of his right to contest Avenel's recommendation that he be confined at Avenel and of the potential distinctions regarding parole consequences when sentenced to an indeterminate term at a psychiatric facility, Avenel, as opposed to an ordinary penal institution. Defendant chose not to contest Avenel's report or the sentence imposed. Judge Arnone specifically advised defendant that he had forty-five days to appeal his sentence if he was not satisfied, and thereafter dismissed the two other counts of the Monmouth County indictment (counts 1 and 3). Defendant did not directly appeal from his convictions or sentences for the Monmouth County offenses.

B.
We deal next with the post-sentencing procedures, including the successive petitions for post-conviction relief.
With respect to the Ocean County conviction and sentence, defendant, on June 3, 1985, filed a pro se petition for postconviction relief and requested assignment of counsel. On June 21, 1985, in apparent violation of Rule 3:22-6(a), the court denied petitioner's request for counsel. Subsequently, defendant's petition for post-conviction relief was denied. The record, however, does not disclose the grounds for petitioner's 1985 PCR application. In 1987, defendant submitted an application for resentencing. *91 On December 28, 1988, a Resentencing Panel denied defendant's application.[1] In 1988, defendant appealed nunc pro tunc the denial of the 1985 PCR application and the denial of his request for assignment of counsel. The Appellate Division dismissed petitioner's appeal without explanation. On February 21, 1989, this Court denied petitioner's petition for certification. 114 N.J. 522, 555 A.2d 634.
In 1991, defendant again petitioned for post-conviction relief from the Ocean County sentence. On September 13, 1991, Judge Campbell denied the PCR petition. On December 12, 1991, the Appellate Division granted petitioner's motion for leave to appeal, as an indigent, the denial of his PCR petition.
With regard to the Monmouth County convictions and sentences, on September 25, 1987, defendant came before a Resentencing Panel. The Panel denied defendant's application for resentencing without prejudice, stating that it could not determine the sufficiency of defendant's sentence without the transcript of the plea proceeding, which had been lost. No further application was ever made. Subsequently, petitioner filed a petition for postconviction relief. On September 15, 1989, Judge Arnone denied the petition. Defendant then brought a motion for reconsideration of the denial of post-conviction relief, which Judge Arnone treated as a subsequent PCR application. That petition was denied on February 16, 1990. On May 3, 1990, the Appellate Division granted defendant's motion for leave to appeal, as an indigent, the denial of his PCR petition.

*92 C.
We next summarize the disposition of defendant's petitions for post-conviction relief by the Appellate Division.
As noted, the Appellate Division, in May 1990, granted defendant's motion for leave to appeal the denial of his Monmouth County PCR, and, in December 1991, granted defendant's motion for leave to appeal the denial of his Ocean County PCR. The Appellate Division granted petitioner's application to consolidate these appeals. On December 23, 1993, the Appellate Division, exercising its original jurisdiction pursuant to Rule 2:10-5, in an unreported decision, reversed the trial court's denial of the Monmouth County PCR petition and granted post-conviction relief from the Monmouth County sentences. Concomitantly, it affirmed the trial court's denial of petitioner's Ocean County PCR petition. The Appellate Division remanded the case to Monmouth County for a modification of its sentence to provide for the concurrency of the Monmouth County sentences with the Ocean County sentence. Because petitioner had served more than fifteen years of his sentence at the time of the Appellate Division's decision, the effect of the Appellate Division's judgment was petitioner's release from Avenel. That judgment has been stayed by this Court.
The State filed a petition for certification contesting the Appellate Division's grant of post-conviction relief from the Monmouth County sentences. Petitioner filed a cross-petition for certification contesting the Appellate Division's denial of post-conviction relief from the Ocean County sentence. On March 31, 1994, this Court granted both petitions for certification. 136 N.J. 31, 641 A.2d 1041.
We now reverse the Appellate Division's grant of post-conviction relief from petitioner's Monmouth County sentences and affirm the Appellate Division's denial of post-conviction relief from petitioner's Ocean County sentence. We reinstate petitioner's concurrent three-year sentences for the Monmouth County crimes to be served consecutively to the Ocean County sentence.

*93 II
The standards for determining entitlement to post-conviction relief are governed by our Rules of Court. Rule 3:22-4 provides that grounds for PCR not raised in prior proceedings are barred unless the petitioner could not have reasonably raised the claim in any prior proceeding or "enforcement of the bar would result in fundamental injustice" or "denial of relief would be contrary to the Constitution of the United States or the State of New Jersey." Rule 3:22-12 states:
A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.
Further, Rule 1:1-2 permits that "any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice."
In invoking these rules, we must consider, as did the Appellate Division, whether the petitions for post-conviction relief, considered separately or as interrelated, present grounds on which such relief may be granted.

A.
With regard to the Ocean County PCR application, the Appellate Division noted two improprieties. During the plea hearing, the trial court did not establish an adequate factual basis for the plea in accordance with Rule 3:9-2. The acceptance of the plea came after a side-bar conference, which was neither recorded verbatim nor its substance noted on the record. Petitioner alleges that during the side-bar conference he was promised a maximum sentence not to exceed ten years, and that he pled guilty to the Ocean County offense based on that agreement. Further, the Appellate Division intimated that the ten-year sentence constituted a quid pro quo for the absence of a proper factual basis for the plea.
*94 Second, on realizing that Andrews, supra, prohibited the imposition of a maximum term of less than fifteen years, Judge Huber modified defendant's sentence to an indeterminate term not to exceed fifteen years. The Appellate Division suggests that the trial court erred by failing to inform defendant of his right to retract his guilty plea at resentencing. Further, the appellate court proposes that defense counsel failed to represent defendant adequately because he did not advise defendant of his right to retract his guilty plea at the resentencing.
We conclude that the record does not support these determinations of the Appellate Division.
On November 1, 1977, at defendant's plea hearing for the Ocean County offense, the court announced that defendant was charged with "[i]ncestuous conduct between parent and child" and that the statute prescribed punishment "by a fine of not more than a thousand dollars, or of prison for not more than fifteen years, or both." The following colloquy took place:
THE COURT: All right. It states here that you willfully committed an act of indecency towards [D.M.], intending to debauch his morals, by licking his penis; is that correct?
DEFENDANT: I don't recall the exact episode, but I think that there's  the spirit of the charge is correct, yes.
THE COURT: Were you intoxicated?
DEFENDANT: No. It happened awhile ago, and I don't remember the incident.
Perturbed by defendant's inability to recite a factual basis for the plea, the county prosecutor requested a side-bar conference, which, as noted, was conducted off-the-record. After the side-bar, the court confirmed defendant's satisfaction with his counsel's representation and explanation of the consequence of pleading guilty to the criminal charge. Then, the following conversation took place:
THE COURT: And do you understand that by pleading, you admit the allegations of the charge against you? Do you understand that?
DEFENDANT: (No response.)
THE COURT: That's what a plea is: Yes I'm guilty of the offense, Judge.
* * * * * * * *

*95 DEFENDANT: I would like to enter that plea, but I have a lot of conflicting things about it.
THE COURT: Do you have any prior record?
DEFENDANT: Yes, I do, in the same area.
THE COURT: All right. Well, there's no magic to the use of the words, "my plea is voluntary," or "I accept the facts." I think [defendant] understands completely the nature of the offense. I think that he's admitted the charges. He may have reservations about them, but I don't think there's any reservation about your admission, is there?
DEFENDANT: No, sir. I'm not in any way trying to deny the nature of the charge at all. I am trying to  I have a problem with the particulars.
* * * * * * * *
PROSECUTOR: But by "particulars," is it the date that's bothering you as far as this particular thing goes?
DEFENDANT: I'm not sure. There's so many things that bother me about it. I don't  that's not, you know, particularly a problem.
Defendant never actually recited the specific facts of the incident serving as the basis for his guilty plea, as contemplated by Rule 3:9-2. Nevertheless, the court accepted defendant's plea as voluntary and noted his understanding of the nature of the charge.
Although this Court recognizes that under some circumstances, a court's sentence based on the acceptance of a guilty plea without a factual basis may render the sentence illegal within the meaning of Rule 3:22-12, State v. Mitchell, 126 N.J. 565, 601 A.2d 198 (1992), the trial court's failure to spell out the factual basis of defendant's plea did not, under the circumstances, constitute an improper acceptance of the guilty plea sufficient to invalidate his conviction and to render his sentence illegal. As noted in Mitchell:
Our procedural Rules do require a judge to elicit a factual basis for a guilty plea. R. 3:9-2. As long as a guilty plea is knowing and voluntary, however, a court's failure to elicit a factual basis for the plea is not necessarily of constitutional dimension and thus does not render illegal a sentence imposed without such a basis. A factual basis is constitutionally required only when there are indicia, such as a contemporaneous claim of innocence, that the defendant does not understand enough about the nature of the law as it applies to the facts of the case to make a truly "voluntary" decision on his own. See McCarthy v. United States, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425-26 (1969); State v. Barboza, 115 N.J. 415, 421 & n. 1 [558 A.2d 1303] (1989).
[126 N.J. at 577-78, 601 A.2d 198].
*96 At the plea hearing, defendant did not express a contemporaneous claim of innocence, and the record of the proceeding clearly indicates defendant's satisfaction with his attorney's representation, his acknowledgement of a prior record for similar offenses, and his understanding of the crime and the significance of his guilty plea.
Further, there is no support for the Appellate Division's suggestion that the court accepted the guilty plea without a proper factual basis as a quid pro quo for offering defendant a sentence not to exceed ten years.
Many years later, in 1991, when defendant moved for postconviction relief in Ocean County, he argued that his sentence of "an indeterminate term not to exceed fifteen years" violated his understanding of the original plea agreement, which, he claimed, was made in contemplation of an indeterminate term not to exceed ten years. That assertion, however, is contradicted by the written plea agreement, which proposes only a sentence of fifteen years, and is unsupported by the transcript of the plea hearing, which does not refer or allude to the existence of a ten-year sentence agreement or understanding. As duly noted by the Appellate Division, "[n]either the transcript of the original sentencing proceeding nor of the resentencing proceeding contains any reference by defendant to any understandings he may have had as to the ten-year term."
The Appellate Division found inferential support for defendant's contention that he was promised a ten-year maximum term. First, the court noted that, "it was, indeed, not the regular practice at that time [1977] for the prosecutor's recommended sentence to be stated in the agreement. Rather, the agreement then typically referred to the maximum sentence imposable." Second, the judge did originally impose a ten-year maximum.
Although the trial judge sentenced defendant to an indeterminate term not to exceed ten years and it may have been the practice of prosecutors not to list the recommended sentence in the plea agreement, we cannot ignore the fact that the expressed *97 plea agreement itself clearly calls for "an indeterminate term not to exceed fifteen years." Further, defendant had the opportunity to provide supporting affidavits from any and all parties present at the side-bar conference to confirm the existence of the alleged ten-year agreement. He has not provided the courts with any such documentation. Moreover, any inference of the existence of such an understanding is further weakened by the fact that defendant did not mention the alleged ten-year agreement when it was most natural and opportune for him to have done so, at the Ocean County resentencing hearing and at his Monmouth County sentencing. In short, the evidence of record does not demonstrate that the plea was improvidently entered or that the sentence ultimately imposed violated the terms of the plea agreement.
We thus conclude that defendant's Ocean County sentence was not illegal. Furthermore, defendant filed his first petition for post-conviction relief from the Ocean County sentence on June 3, 1985, more than seven years after his guilty plea and sentencing. He has not alleged sufficient facts to demonstrate that his delay beyond five years from the date of the sentence was due to excusable neglect. See Mitchell, supra, 126 N.J. at 576-77, 601 A.2d 198. Consequently, his post-conviction relief petition was subject to the five-year time limitation of Rule 3:22-12. In addition, defendant furnishes no alternative grounds under Rule 3:22-4 for relief from the Ocean County sentence.
We conclude that the Appellate Division's affirmance of the denial of the Ocean County PCR petition was proper.

B.
In granting petitioner's Monmouth County petition for post-conviction relief, the Appellate Division focused on three major concerns. First, the Appellate Division concluded that petitioner was not properly notified of the disparate consequences of being sentenced to Avenel as opposed to an ordinary penal institution. Second, the court noted that defendant's attorney was not vigorous in attempting to urge the Monmouth County sentencing *98 judge to make his Monmouth County sentence concurrent with the Ocean County sentence. Third, the court determined that defendant's aggregate eighteen year sentence is manifestly unjust.
The perceived injustice of the aggregate sentence is based on the Appellate Division's belief that defendant was promised a ten-year maximum sentence in exchange for his Ocean County plea, which, in combination with the shorter concurrent sentences contemplated by his Monmouth County plea agreement, should have resulted in a combined maximum sentence of only ten years. The Appellate Division further surmised that "even if the Monmouth sentences were not concurrent with the Ocean sentence, defendant still was entitled to assume that his maximum aggregate exposure in both counties was thirteen years." The Appellate Division found the disparity between the sentences expected by defendant and the sentences actually imposed unjust and grounds for granting defendant PCR relief from the Monmouth County sentence.
Because we find defendant's Ocean County sentence to be valid, it does not constitute a basis for impugning the Monmouth County sentence.
The terms of the Monmouth County plea agreement, as earlier indicated, stated that defendant was subject to a maximum sentence of six years. Supra, at 89, 657 A.2d at 840. However, Judge Arnone sentenced defendant on the Monmouth County offenses to two three-year terms to be served concurrently (notwithstanding the indication in the plea agreement that concurrent terms would be imposed only if defendant were not found to be a sex offender). Moreover, defendant never appealed those sentences. Rather, he waited more than eleven years to argue that the term "concurrent" meant that his Monmouth County sentences would be concurrent with the Ocean County sentence. That long delay negates any inference that the sentences imposed were not in accordance with defendant's expectations and were inconsistent with his understanding of the Monmouth County plea agreement.
*99 Those circumstances also militate against the contention that petitioner's attorney rendered ineffective assistance of counsel in failing to urge the Monmouth County judge to impose concurrent sentences. On February 16, 1990, defendant raised that issue in his motion for reconsideration of the court's initial denial of his application for post-conviction relief. In support of the claim that counsel was ineffective, defendant asserted that his parents wanted to see him incarcerated for as long as possible, and that his attorney, who represented his parents in the past, acted in their interest by failing to urge the concurrent sentence, thereby lengthening his incarceration in accordance with his parents' wishes. However, defendant proffers no support for his assertion that his attorney was not representing his best interests.
The conclusion of the Appellate Division that defendant was not sufficiently advised of the penal consequences of his plea is derived from defendant's PCR petition. In 1989, defendant was represented by the public defender, who in support of the petition argued that the "Informational Statement and Form for Defendant and Counsel Prior to Sentencing as a Sex Offender" did not comport with the requirements of State v. Howard, 110 N.J. 113, 539 A.2d 1203 (1988). Although the informational statement differentiated the standards for release from an Avenel sentence as compared with parole from a state prison term, the public defender argued that the court did not adequately question defendant, as required by Howard, to ensure that he understood those disparate consequences. Id. at 123, 539 A.2d 1203.
The informational statement informed defendant that he could request a hearing to challenge the Avenel report, which recommended his commitment to that institution. The statement further informed defendant that if the court sentenced him to Avenel, "parole cannot be granted unless it is recommended by a Special Classification Review Board and approved by the State Parole Board. Under such a commitment you are not entitled to credits for work or good behavior...." The informational statement further stated that if the court sentenced defendant to a penal *100 institution other than Avenel, the general parole statutes would control parole and that the state prison could credit him for work and good behavior based on his conduct. Although the Appellate Division believed that defendant did not sign the informational statement until after sentencing, the record strongly suggests that the statement was signed prior to sentencing. In any event, to the extent that the informational statement's explanation of the disparate consequences of sentencing to Avenel and the court's assurance of defendant's understanding of those consequences did not comply with Howard, supra, this Court has specifically limited Howard to prospective application. State v. Lark, 117 N.J. 331, 567 A.2d 197 (1989), rev'g 229 N.J. Super. 586, 552 A.2d 229 (App.Div.). Because defendant's case was not pending at the time of the Howard decision in 1989, the requirements of Howard are inapplicable. Lark, supra, 117 N.J. at 341, 567 A.2d 197.

III
Defense counsel argues that because of defendant's psychological treatment during the criminal proceedings and thereafter up until the filing of the PCR applications, he should be exempt from the time requirement of Rule 3:22-12. However, no specific facts have been adduced with regard to defendant's mental state to show that his psychological treatment would have prevented him from pursuing his rights and remedies either on appeal or within the five years provided by statute.
This Court observed that:
As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable. .. . Moreover, the Rule [3:22-12] serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The Rule therefore strongly encourages those believing they have grounds for post-conviction relief to bring their claims swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.
* * * * * * * *

*101 In the context of post-conviction relief, a court should relax R. 3:22-12's bar only under exceptional circumstances.... Absent compelling, extenuating circumstances, the burden of justifying a petition filed after the five-year period will increase with the extent of the delay.

[Mitchell, supra, 126 N.J. at 575-76, 580, 601 A.2d 198 (emphasis added).]
After eleven years, considering the "increased burden" of justifying the grant of post-conviction relief, defendant has not presented the compelling and extenuating circumstances necessary to demonstrate excusable neglect for the delay in filing his Monmouth County PCR petition.
The Appellate Division believed "there are too many disquieting circumstances surrounding the original proceedings and their aftermath to warrant out-of-hand rejection of defendant's fundamental claim that he has been the victim of substantial injustice." However, the concerns that give rise to the Appellate Division's disquietude must be considered in light of the record under the rules governing post-conviction relief.
Rule 3:22-4, as noted, provides that grounds for PCR not raised in prior proceedings are barred unless the petitioner could not have reasonably raised the claim in any prior proceeding or "enforcement of the bar would result in fundamental injustice." Further, Rule 1:1-2 generally authorizes the relaxation of any rule "if adherence to it would result in an injustice." This Court in Mitchell, supra, emphasized the importance of the rules and the limited applicability of Rule 1:1-2, noting:
The difficult task, then, is to determine under what exceptional circumstances applying our Rules could be considered an "injustice." In the first place, for the petitioner to allege simply that an injustice has transpired is not enough. The petitioner must be prepared to "establish, by a preponderance of the credible evidence, that he is entitled to the requested relief." State v. Marshall, 244 N.J. Super. 60, 69 [581 A.2d 538] (Law Div. 1990). To sustain that burden, specific facts must be alleged and articulated, which, if believed, would provide the court with an adequate basis on which to rest its decision. A court reviewing a petition that does not allege facts sufficient to sustain that burden of proof should not jump to its own conclusions regarding the factual circumstances of the case.
* * * * * * * *
[T]he Rules are imposed for a purpose. They already contain ample exceptions allowing their relaxation to ensure fairness and prevent injustice. We do not *102 endorse their rigid, mechanical application; we state simply that the Rules and their exceptions should be conscientiously applied to the unique circumstances of each case with due respect for both the rule and the exception.
[Id. at 579, 589, 601 A.2d 198.]
The pursuit of justice, however, is bound by the record and constrained by the rules that prescribe the standards governing post-conviction relief. It is apparent that the major concern underlying the grant of the Monmouth County PCR petition is derived from the Appellate Division's belief that defendant was promised a ten-year sentence in exchange for his Ocean County plea. The record, as shown, does not establish the existence of such an understanding, and hence cannot support the conclusion that the carrying out of defendant's sentences is unjust.

IV
For the reasons set forth, we conclude that the facts do not support the grant of post-conviction relief from either the Monmouth or Ocean County sentences. Therefore, we reinstate defendant's Monmouth County concurrent three-year sentences for the Monmouth County crimes, to be served consecutively to the Ocean County sentence.
For reversal in part; affirmance in part 
Chief Justice WILENTZ and Justices HADLER, POLLOCK, O'HERN, GARIBALDI, and STEIN  6.
Opposed  None.
NOTES
[1] The Legislature adopted the New Jersey Code of Criminal Justice in 1978. N.J.S.A. 2C:1-1(d)(2) provides that a person serving a sentence of imprisonment on the Code's effective date for an offense committed prior to that date, which offense the Code eliminated or the court sentenced the person to a maximum term which exceeded the maximum established by the Code for such offense, may move to have the sentencing court review the sentence and impose a new sentence, if applicable. Defendant was serving his sentences when the Code became effective.