838 A.2d 543 (2002)
365 N.J. Super. 203
STATE of New Jersey
v.
Thomas MEROLA Defendant.
Superior Court of New Jersey, Law Division (Criminal), Essex County.
Decided March 15, 2002.
*546 Carolyn E. Wright, Special Deputy Attorney General, for the State.
Furman L. Templeton, Jr., Montclair, for Defendant Merola. *544
*545 PETER V. RYAN, J.S.C.
The present matter is an application for post-conviction relief ("PCR") by the petitioner, Thomas Merola, pursuant to the provisions of New Jersey Court Rule 3:22-1, et. seq. The defendant was convicted by an Essex County petit jury on September 24, 1986 of murder (N.J.S.A. 2C:11-3a(1), (2)), armed robbery (N.J.S.A. 2C:15-1) and two (2) counts of aggravated assault (N.J.S.A. 2C:12-1b(1)). Subsequent thereto, he was sentenced by the Honorable Paul T. Murphy, J.S.C., on November 2, 1984 to a custodial term of thirty (30) years on the murder conviction. Under the provisions of N.J.S.A. 2C:11-3b, the entire sentence was to be served without parole eligibility. Concurrent sentences were imposed on the remaining charges.
The petitioner filed a notice of appeal which resulted in an affirmance by the Appellate Division in a reported opinion entered on December 1, 1986. Certification to the New Jersey Supreme Court was denied on February 2, 1987. State v. Merola, 214 N.J.Super. 108, 518 A.2d 518 (App.Div.1986), certif. denied, 107 N.J. 91, 526 A.2d 168 (1987). The issues raised on direct appeal were: (1) the use of defendant's pre-arrest and post-arrest silence to attack his credibility; (2) improper commentary on the evidence by the trial judge during jury instructions; (3) the court's instructions to the jury were erroneous, individually and cumulatively; and (4) prosecutorial misconduct.
During 1987, the petitioner moved pro se for a reduction of sentence which was denied by the trial court on January 4, 1988. On appeal, the Appellate Division treated the matter as an excessive sentence appeal motion under R. 2:9-11 and denied same on June 16, 1998. The Supreme Court denied certification in an order dated April 20, 1989. State v. Thomas Merola, 117 N.J. 37, 563 A.2d 809 (1989).
Mr. Merola petitioned the United States District Court for the District of New Jersey for a writ of habeas corpus, 28 U.S.C.A. 2254, which was dismissed by the Honorable John W. Bissell, U.S.D.J., on June 29, 1990 for failure to exhaust state remedies. Three years later, a second habeas application was docketed, but denied on substantive grounds by Judge Bissell on February 8, 1994. The United States Court of Appeals for the Third Circuit denied a request for a certification of probable cause and the appeal was disallowed on August 4, 1994. A petition for a rehearing and a rehearing en banc were rejected on October 14, 1994 and November 14, 1994, respectively.
A final administrative determination by the Department of Corrections that the petitioner's thirty (30) year mandatory parole ineligibility sentence could not be reduced via commutation and/or work credits was appealed pro se with the assistance of pro bono counsel. The Appellate Division, *547 in a reported opinion, validated the administrative determination. Merola v. Department of Corrections, 285 N.J.Super. 501, 667 A.2d 702 (App.Div.1995), certif. denied, 143 N.J. 519, 673 A.2d 277 (1996). A petition for habeas corpus relief was likewise denied by the Honorable Joseph A. Greenaway, Jr., U.S.D.J. on October 28, 1998. The Third Circuit Court of Appeals dismissed the appeal and a petition for a writ of certiorari was denied by the United States Supreme Court on November 1, 1999. See, Merola v. New Jersey Department of Corrections, 528 U.S. 971, 120 S.Ct. 413, 145 L.Ed.2d 322 (1999).
A review of the facts germane to the issues raised herein is an essential prerequisite to their determination. This court adopts the facts as set forth by the Appellate Division of the Superior Court of New Jersey. State v. Merola, 214 N.J.Super. 108, 518 A.2d 518 (App.Div.1986), certif. denied, 107 N.J. 91, 526 A.2d 168 (1987). The testimonial evidence elicited at trial revealed that the incident that precipitated the murder was a drug deal "gone bad".
In the early morning hours of November 24, 1983 Omar Muhammed was shot and killed and Michael Bambo was wounded during the course of a heated dispute concerning a drug transaction. The State's theory at trial was that defendant shot both men when they refused to permit him to sample a quantity of cocaine he was about to purchase. The defense contended that Muhammed and Bambo accidently shot each other while they were attempting to rob the defendant. Id. at 110-11, 518 A.2d at 519.
In the evening of November 23, 1983, defendant, Joseph Deleva, Terri Giannetta and Dominie Buda were having drinks at the Finnish Line, a tavern located in Newark, when they decided to purchase some cocaine. The group proceeded to an address located on Fifth Street and Bloomfield Avenue where Deleva attempted to buy the drugs from an acquaintance, Byron Robinson. Although Robinson did not have any cocaine in his possession, Bambo, who apparently overheard the conversation, suggested that they could purchase the drugs from him. After brief negotiations, it was agreed that the group would follow Bambo to his apartment in Nutley.
Bambo and Robinson then met Muhammed and drove off in Muhammed's automobile. During the ride, Bambo confided to Robinson that he intended to "beat [those] white guys" by selling them something other than cocaine. Bambo agreed to pay the other two men $40 each and "some beer and wine" in return for their assistance.
Defendant, Deleva, Giannetta and Buda followed in Buda's automobile. En route to Bambo's apartment, Buda became increasingly alarmed because it appeared that Muhammed was driving in circles. When they finally arrived at the parking lot adjacent to Bambo's apartment building, Buda, because of her concern, parked her automobile facing the exit approximately 27 feet from Muhammed's vehicle. Defendant then accompanied Robinson, Muhammed and Bambo into the building. While in the apartment, Bambo obtained a tinfoil apparently containing cocaine. Id. at 111, 518 A.2d at 519.
The men then returned to the parking lot. At that point, an argument developed because defendant refused to pay for the cocaine without first sampling it. Deleva and Giannetta observed Muhammed "unzip his jacket" and reach across his chest in a manner which caused them to fear he was in possession of a firearm. Deleva urged defendant to return to the car. Defendant refused, however, and proceeded to the driver's side of Muhammed's automobile.
*548 It is at this point that the State's and the defense's version of what transpired differ markedly. According to State's witnesses, Muhammed was seated in the driver's seat with the door open when defendant approached. The window on the driver's side was also open. Robinson testified that as Muhammed leaned across the seat to unlock the door on the passenger's side, defendant reached in the driver's side window and shot the deceased in the chest. After hearing the shot, Robinson attempted to escape, but was confronted by defendant who pointed the gun at him and demanded the cocaine. Robinson told defendant that he didn't have the drugs and emptied the contents of his pockets. When defendant bent down, Robinson ran off.
Bambo testified that Buda drove out of the parking lot when the shots were fired. At that point, defendant, who was apparently still chasing Robinson came upon Bambo and, without warning, shot him in the shoulder. Bambo and Robinson then ran toward a police patrol car that was approaching the parking lot. The two men frantically told the officer about the shootings. Bambo was immediately taken to the hospital for treatment of his wounds. Id. at 112, 518 A.2d at 520.
The accounts of Robinson and Bambo were corroborated by the testimony of several residents of the apartment complex. Although they were unable to positively identify defendant as the perpetrator of the shootings, their descriptions of the fast-moving events confirmed the version of Robinson and Bambo in several particulars. In addition, Michael Liscari, a visitor who observed the incident from the window of a fourth floor apartment, testified that, as the police officer's patrol car pulled into the parking lot, his attention was diverted to a man, resembling defendant, leaning into Muhammed's automobile apparently searching for something. When he finished, the man wiped the car door, the steering wheel and the dashboard with his sleeve and fled into the adjacent field. Id. at 112-13, 518 A.2d at 519-20.
Defendant elected to testify. As we have noted, his account of the events immediately prior the killing generally mirrored the evidence presented by the State. He denied, however, shooting Muhammed and Bambo. According to his testimony, a heated argument developed between him and Muhammed upon returning to the parking lot after Bambo had obtained the cocaine. He testified that as he was reaching into his pocket in order to pay for the drugs when he was suddenly "struck twice in the face with a hard object". Muhammed stood on one side of him and Bambo on the other. Both men brandished handguns. As he heard shots being fired, defendant struck Muhammed in the mouth and escaped.
Defendant testified that he was cut and bleeding from the attack by Muhammed and Bambo. In a dazed condition, defendant fled into the nearby streets where he was ultimately found by Deleva and Giannetta who, along with another friend, had returned to look for him. Deleva accompanied defendant to his apartment where they stayed that night.
Defendant testified that upon entering his apartment he immediately took off his bloody clothing and set it afire. Defendant then flushed the remnants down the toilet. A piece of charred remains was eventually discovered by defendant's landlord and was given to the police. Defendant's explanation for attempting to destroy his clothing was thoroughly elicited during his direct examination and repeated during his cross-examination. Defendant testified that he had been convicted previously of distributing controlled dangerous *549 substances and uttering a forged instrument and was on probation at the time of the incident. According to defendant, he feared that disclosure of his attempt to purchase cocaine would result in revocation of his probation and imprisonment. Moreover, defendant testified that he did not know Muhammed and Bambo had been shot. According to his testimony, he first learned of Muhammed's death while reading a local newspaper several days later at which time he retained an attorney and surrendered. Defendant admitted, however, that on the day after the incident he had his sister take photographs depicting his wounds. Id. at 113-14, 518 A.2d at 520-21.
In his verified petition, the defendant raises six (6) grounds for relief which are condensed into four (4) points in the petitioner's memorandum of law as follows:
Point I - The trial court failed to instruct the jury pursuant to N.J.S. 2C:2-3b with respect to the issue of causation, consistent with petitioner's theory of defense against the murder charged by the first count, and instead instructed the jury about the previously repealed statutory defense of "misadventure".
Point II - He was deprived of his State and Federal Constitutional rights to the effective assistance of counsel when his trial counsel failed to request that his jury be instructed pursuant to N.J.S. 2C:2-3 with respect to the issue of causation, consistent with the petitioner's theory of defense against the murder charged by the first count, and failed to object to the trial court's instruction to the jury about the previously repealed statutory defense of "misadventure".
Point III - The trial court failed to re-instruct the jury with respect to the critical issue of identification when, in response to the jury's request, it re-instructed the jury with respect to the elements of the murder charged by count one and its lesser included offenses.
Point IV - He was deprived of his State and Federal Constitutional rights to the effective assistance of counsel when his trial counsel failed to object to the omission of instructions concerning the issue of identity from the trial court's supplemental instructions, and did not request that petitioner's jury be re-instructed with respect to the issue of identity as part of the trial court's supplemental instructions.
The State has submitted a reply brief and the court has heard oral argument on the issues. See, State v. Mayron, 344 N.J.Super. 382, 384-85, 782 A.2d 437, 438-39 (App.Div.2001). Thereafter, defense counsel requested and was granted an extension to submit further written memorandum addressed to the time bar of R. 3:22-12, and supplemental material on the petitioner's umbrella averment that he was denied effective assistance of counsel under the Sixth Amendment. The court has reviewed the latest submission which cites an unpublished Appellate Division opinion, State v. David Goodwin, No. A-0277-99 (App.Div. May 18, 2001). More particularly, counsel for Mr. Merola declares in his March 8, 2002 letter-brief "that the decision in Goodwin is dispositive in petitioner's favor of petitioner's derivative ineffective assistance of counsel constitutional claims and of the non-applicability of the time bar of R. 3:22-12".[1]
*550 This court has studied the issues in conjunction with the record, the applicable statutory and case law and the arguments of counsel, and determines that they are clearly without merit. Moreover, the court is satisfied that an evidentiary hearing is not required as a precondition to this decision.
Although R. 3:22-1 does not require evidentiary hearings to be convened in post-conviction relief petitions, R. 3:22-10 recognizes judicial discretion to conduct such hearings. State v. Marshall, 148 N.J. 89, 157-58, 690 A.2d 1, 34-35, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997); State v. Preciose, 129 N.J. 451, 462, 609 A.2d 1280, 1286 (1992). Ordinarily, a post-conviction relief court should grant an evidentiary hearing to a defendant who has presented a prima facie case in support of his application. Marshall, supra, 148 N.J. at 158, 690 A.2d at 35; Preciose, supra, 129 N.J. at 462, 609 A.2d at 1286. To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits. Marshall, supra, 148 N.J. at 158, 690 A.2d at 35; Preciose, supra, 129 N.J. at 463, 609 A.2d at 1286. Moreover, in determining whether to grant an evidentiary hearing, the post-conviction relief court must consider the facts in the light most favorable to defendant to determine whether a defendant has established a prima facie claim. Marshall, supra, 148 N.J. at 158, 690 A.2d at 35; Preciose, supra, 129 N.J. at 462-63, 609 A.2d at 1286-87; State v. Garcia, 320 N.J.Super. 332, 338, 727 A.2d 97, 100 (App.Div.1999). If there are disputed issues as to material facts regarding entitlement to post-conviction relief, a hearing should be conducted. State v. Russo, 333 N.J.Super. 119, 138, 754 A.2d 623, 634 (App.Div.2000).
In the instant case, there are no disputed facts. The "bone of contention" is whether trial counsel, within the trial record as transcribed, was ineffective under Sixth Amendment standards. Further, the petition challenges the court's instructions as a foundation for constitutional claims. The issues are uncomplicated, the facts unambiguous and the arguments aimed at relief, unpersuasive. The petition is procedurally time barred under R. 3:22-12 (ten plus years tardy) and from a substantive vantage point, unsupportable for the reasons to be delineated.
This petition for post-conviction relief was docketed in the venue of Essex County on May 8, 2000more than fifteen (15) years after entry of the judgment of conviction on November 2, 1984 and more than ten (10) years beyond the five (5) year time bar of R. 3:22-12. Thomas Merola is currently housed at the East Jersey State Prison in Rahway, New Jersey.
Post-conviction relief is governed by the provisions of New Jersey Court Rules 3:22-1, 3:22-2 and 3:22-12 which read:
3:22-1 Petition for Relief - Any person convicted of a crime may, pursuant to this rule, file with the county clerk of the county in which the conviction took place, a petition for post-conviction relief captioned in the action in which the conviction was entered.
3:22-2 Grounds - A petition for post-conviction relief is cognizable i.e. based upon any of the following grounds:
(a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United *551 Stated or the Constitution or laws of the State of New Jersey;
(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;
(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law;
(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law statutory remedy.
3:22-12 Limitation - A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than five (5) years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.
Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. State v. Afanador, 151 N.J. 41, 49, 697 A.2d 529, 532 (1997); State v. Preciose, supra, 129 N.J. at 459, 609 A.2d at 1284. It is a safeguard that provides a defendant with a means to challenge the legality of a sentence or a final judgment of conviction by raising issues that could not have been raised on direct appeal and, therefore, ensures that a defendant was not unjustly convicted. State v. McQuaid, 147 N.J. 464, 482, 688 A.2d 584 (1997). A petition must establish the right to post-conviction relief by a preponderance of the credible evidence. State v. Preciose, supra, 129 N.J. at 459, 609 A.2d 1280.
PCR, however, is neither a substitute for direct appeal, R. 3:22-3, nor an opportunity to re-litigate matters already decided on the merits. R. 3:22-5; State v. Preciose, supra, 129 N.J. at 459, 609 A.2d at 1284; State v. Mitchell, 126 N.J. 565, 583, 601 A.2d 198, 207 (1992). Further, PCR cannot be used to circumvent issues that could have, but were not raised on appeal, unless the circumstance falls within one of the three (3) exceptions:
(a) the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.
R. 3:22-4; State v. Guzman, 313 N.J.Super. 363, 372, 712 A.2d 1233, 1238 (App. Div.), certif. denied, 156 N.J. 424, 719 A.2d 1022 (1998).
Finally, a PCR petition is time barred if not filed within five (5) years of the judgment or conviction, unless "the delay beyond said time was due to excusable neglect". R. 3:22-12. The petition must claim excusable neglect and allege facts relied on to support that claim. State v. Cann, 342 N.J.Super. 93, 102, 775 A.2d 733, 737 (App.Div.2001). The five (5) year period for filing a petition for PCR allowed under R. 3:22-12 commences with the entry of the judgment of conviction, State v. Riley, 216 N.J.Super. 383, 389, 523 A.2d 1089, 1092 (App.Div.1987), and is not tolled by the pendency of a direct appeal. State v. Dugan, 289 N.J.Super. 15, 19, 672 A.2d 1240, 1242 (App.Div.), certif. denied, 145 N.J. 373, 678 A.2d 714 (1996).
To reiterate for emphasis, the defendant filed this PCR petition on May 8, 2000, more than fifteen (15) years from the date of his conviction/sentence and more than ten (10) years beyond the five (5) year time limitation of R. 3:22-12. This time limitation strives to achieve finality of judgments, and encourages "those believing they have grounds for post-conviction relief to bring their claims swiftly, and discourages them from sitting on their rights until it was too late for a court to *552 render justice". State v. Mitchell, supra, 126 N.J. at 576, 601 A.2d at 203. To be sure, relief may be obtained from the rule's time constraints upon a demonstration of "excusable neglect", Id. at 576-77, 601 A.2d at 203-04, which defendant simply has not made.
In the verified petition at paragraph sixty-seven (67) to seventy-six (76), Mr. Merola delineated the basis of the "excusable neglect" exception. In a nutshell, the defendant asserts that (a) the petitioner is not an attorney and therefore, "did not have a grasp of the legal significance of the direct constitutional claims" now being offered; (b) none of petitioner's prior attorneys ever "advised petitioner of the legal significance of the derivative constitutional claim"; and (c) current counsel was retained in November 1999 and, allowing for review of the record and consultation with Mr. Merola, was not able to file a petition until May 8, 2000. However, these avouchments, either singularly or in the aggregate, do not equal excusable neglect.
Ignorance of the law and rules of court does not qualify as excusable neglect. State v. Murray, 162 N.J. 240, 246, 744 A.2d 131, 134 (2000) ("defendant's assertion that he lacks sophistication in the law does not satisfy the exceptional circumstances required by State v. Mitchell..."); State v. Dugan, supra, 289 N.J.Super. at 22, 672 A.2d at 1243-44 (holding that a defendant's failure to comprehend the meaning of R. 3:22-12 does not constitute excusable neglect). Neither does defendant's purported low IQ or inability to speak or read English qualify. See State v. Cummings, 321 N.J.Super. 154, 166, 728 A.2d 307, 313 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 852 (1999) (holding that a PCR petitioner's difficulty in reading and writing does not establish excusable neglect); see also State v. D.D.M., 140 N.J. 83, 100, 657 A.2d 837, 845 (1995) (finding that a defendant's psychological treatment did not constitute excusable neglect, absent a showing that defendant's mental state prevented him from filing a petition within the deadline). It should be noted, parenthetically, that Mr. Merola retained different private counsel for his direct appeal, two (2) federal habeas petitions and had the benefit of an experienced pro bono counsel for his administrative law litigation. Thus, he had at least three (3) attorneys review and analyze the trial record following his conviction and prior to the commencement of the present action.
The New Jersey Supreme Court has stressed the importance of the procedural bars. State v. Mitchell, supra, 126 N.J. at 583, 601 A.2d at 207. Both the rules and their exceptions should be conscientiously applied to the unique circumstances of each case with due respect for both the rule and any exception. Id. at 589, 601 A.2d at 210; see also, R. 1:1-2 (allowing relaxation of Rules in specifically alleged circumstances of injustice); State v. Afanador, supra, 151 N.J. at 50, 697 A.2d at 533. For the aforementioned reasons, the time bar should not be relaxed under R. 1:1-2. This rule only has a "limited availability" as applied to R. 3:22-12. Pressler, Current N.J. Court Rules, comment on R. 3:22-12 (2001). Though the court rules are not "ends in themselves", R. 1:1-2 is "not intended to vitiate the rules from which it permitted exceptional relief". State v. Mitchell, supra, 126 N.J. at 579, 601 A.2d at 205. Consequently, defendant must be able to establish "exceptional circumstances" such that strict adherence to the five-year time bar of R. 3:22-12 would result in an injustice. Id. at 579-80, 601 A.2d at 205; R. 1:1-2. In making this determination, a court must consider "the extent and cause of the delay, the prejudice to the State, and the *553 importance of the petitioner's claim". State v. Mitchell, supra, 126 N.J. at 580, 601 A.2d at 205. Absent compelling, extenuating circumstances, the longer a defendant delays in filing his PCR petition, the heavier the burden becomes in justifying the late filing. Ibid. As time passes, justice becomes more elusive and the necessity for preserving finality and certainty of judgments increases. Id. at 576, 601 A.2d at 203; see also State v. D.D.M., 140 N.J. 83, 657 A.2d 837 (1995) (holding seven and eleven year delays in filing PCR sentencing claims excessive absent compelling circumstances); State v. McQuaid, supra, 147 N.J. at 497, 688 A.2d at 601 (holding unjustifiable defendant's request for PCR seven years after guilty plea from which defendant gained substantial benefit does not demonstrate manifest injustice pursuant to Rule 3:21-1); State v. Afanador, supra, 151 N.J. at 52, 697 A.2d at 534.
In this case, defendant has demonstrated no exceptional or compelling extenuating circumstances that would otherwise cause an injustice if relief from the temporal restriction were not obtained. On the contrary, given the ten-year-old delay, allowing defendant to proceed would greatly prejudice the State. Indeed, the trial was held over fifteen (15) years ago, lasted a number of days and involved the testimony of a multitude of witnesses.
Although the procedural block of R. 3:22-12 is a more than an ample basis to deny outright any relief sought, it appears appropriate to discuss briefly the substantive arguments advanced by the petitioner. The centerpiece of the petitioner's present contention is that trial counsel was ineffective. Putting aside for the moment the time prohibition of R. 3:22-12, petitioners are rarely barred from raising ineffective assistance of counsel claims on post-conviction review. Such claims may fall within R. 3:22-4(c), which affords post-conviction review for constitutional claims that could have been raised earlier, because those claims are grounded in the Sixth Amendment and the New Jersey Constitution. State v. Preciose, supra, 129 N.J. at 459-60, 609 A.2d at 1284. Ineffective-assistance-of-counsel claims are also particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding, and, therefore, they involve allegations and evidence that often lie outside the trial record. Id.; State v. Russo, supra, 333 N.J.Super. at 138, 754 A.2d at 633.
This general rule or observation does not, however, square with the facts of the instant case. The claim of "ineffective assistance" is predicated on the trial performance of counsel and the facts to bolster this criticism are extracted from the trial record. As a result, all of the issues that are now being highlighted were cognizable and discoverable at a much earlier stage. Indeed, as a consequence, the State counters that this court should invoke R. 3:22-4 and vehemently declares that the "misadventure" and "causation" issues were plainly ripe for review on direct appeal. Alternatively, the State remarks that the defense on direct appeal challenged the jury instructions, individually and cumulatively, which triggers the use of R. 3:22-5.
The Sixth Amendment to the United State Constitution and Article I, paragraph 10, of the New Jersey Constitution, guarantees a defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984); State v. Fisher, 156 N.J. 494, 499, 721 A.2d 291, 293 (1998). In order to prevail on an ineffective assistance of counsel claim, defendant must establish that counsel's performance was deficient. This requires showing that counsel made errors so serious *554 that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Fisher, supra, 156 N.J. at 499, 721 A.2d at 293; State v. Fritz, 105 N.J. 42, 53-58, 519 A.2d 336, 342-45 (1987). If defendant satisfies the first prong of the test, he must also establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Fisher, supra, 156 N.J. at 500, 721 A.2d at 294; Fritz, supra, 105 N.J. at 52, 519 A.2d 336. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Ibid. The reasonableness of counsel's performance should be evaluated in light of all relevant circumstance at the time the alleged error occurred. Strickland, supra, at 689-90, 104 S.Ct. at 2067-68, 80 L.Ed.2d at 694-95. The inquiry must include the possibility that counsel's decisions were based on sound trial strategy rather than incompetence or deficiency. Id. at 690-91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695-96. The defendant bears the burden of proving that counsel's performance was unreasonable under the prevailing professional norms. Id. at 687-91, 104 S.Ct. at 2064-66, 80 L.Ed.2d at 693-95; State v. Timmendequas, 161 N.J. 515, 598-99, 737 A.2d 55, 100 (1999).
With respect to the defendant's substantive arguments, this court concludes that the petition has not set forth facts that established a serious question about his guilt or the fairness of the trial. This is not the exceptional or extraordinary case in which there is an injustice sufficient to invoke R. 1:1-2 to relax R. 3:22-12's procedural time bar. See, for example, State v. Cummings, supra, 321 N.J.Super. at 169, 728 A.2d at 315. Careful perusal and analysis of the record leads inexorably to the conclusion that the trial counsel was not ineffective. On the contrary, his performance and trial strategy was both competent and creative.
Petitioner's main complaint is the absence of a jury charge on causation and the erroneous giving of the misadventure instruction, which was "previously repealed". Concededly, the statute, N.J.S.A. 2A:113-6, related to killing by misadventure, self-defense or defense of others, was repealed by the New Jersey Legislature, effective September 1, 1979. The justification defenses incorporated in N.J.S.A. 2A:113-6 were integrated into the New Jersey Code of Criminal JusticeChapter Three, entitled General Principles of Justification. The New Jersey Law as to justification defenses is actually found in the cases. The approach of the Code is to abandon this case-by-case development in favor of a fresh, integrated treatment on the subject. Cannel, New Jersey Criminal Code Annotated, comment on N.J.S.A. 2C:3-1(20012002) (quoting 1971 Commentary).
Under N.J.S.A. 2C:3-2, the Code addresses those justification defenses that were not specifically delineated in the new Code. "Conduct which would otherwise be an offense is justifiable by reason of any defense of justification provided by law for which neither the Code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved and a legislative purpose to exclude the justification claimed does not otherwise plainly appear". N.J.S.A. 2C:3-2b. This subsection b. concerns justification/defenses existing at common law. It makes sufficient any defense of justification permitted by the common law and not inconsistent with a deliberate legislative choice. Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. *555 2C:3-2b (20012002) (quoting 1971 Commentary). Without such a section the Code might be read to exclude justifications which may have existed in the common law, or would be added to that law when an appropriate case arose. This section should be compared with the even more general 2C:2-5. Cannel, supra, comment 2 on N.J.S.A. 2C:3-2.
With the advent of the Code, the preservation of prior defenses was emphatically noted in N.J.S.A. 2C:2-5 which reads:
Defenses Generally. Conduct which would otherwise be an offense is excused or alleviated by reason of any defense now provided by law for which neither the code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved and a legislative purpose to exclude the defense claimed does not otherwise plainly appear.
The section was added apparently as an exercise in caution. The parallel provision, 2C:3-2, serves a similar purpose. Cannel, supra, comment 2 on N.J.S.A. 2C:2-5 (2001-2002). "It is intended to save any existing defenses which would excuse or alleviate liability and which are not covered by the Code nor the law defining the particular offenses. While we believe it appropriate in codifying the substantive offenses to abolish common-law crimes (see Section 2C:1-5), there may be unusual defenses which should be retained if appropriate in a particular situation. We would not wish to exclude them by implication and thus we have included this Section and one applicable to existing justification defenses (2C:3-2b)." Id. (quoting 1971 Commentary, par. 2). Thus, the Code provides that "conduct that would otherwise be an offense is excused or alleviated by reason of any defense... provided by law". N.J.S.A. 2C:2-5; State v. Moore, 158 N.J. 292, 301, 729 A.2d 1021, 1025-26 (1999); State v. Bowens, 108 N.J. 622, 631, 532 A.2d 215, 219-20 (1987).
Contrary to petitioner's assertion, therefore, misadventure was a viable defense that was published to the jury to excuse the homicide. It was as legally efficacious then as it is now. Cf. State v. Reyes, 50 N.J. 454, 464, 236 A.2d 385, 390 (1967); Ahn v. Kim, 145 N.J. 423, 423, 678 A.2d 1073 (1996); State v. Johnson, 223 N.J.Super. 122, 127-28, 538 A.2d 388, 390 (App. Div.1988); State v. Reed, 211 N.J.Super. 177, 182, 511 A.2d 680, 682-83 (App.Div. 1986) (referring to "misadventure"). Further, the instruction was without objection and with the obvious approval of the defense as part of their trial strategy. Indeed, the jury charge included the admonition that "you must determine, therefore, whether the State has proven each and every element of the offense charged, including that the killing was not the result of misadventure" (Trans. Sept. 21, 1984; p. 47, I. 22-25). The trial judge emphasized "the defendant has neither the burden nor the duty to show that the homicide was by misadventure. The State has the burden of proof, beyond a reasonable doubt, that the killing was not a misadventure, namely, that at least one of the facts or elements I listed do not exist" (Trans. Sept. 21, 1984; p. 48, I. 11-15).
As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54, 61 (1988); State v. Sloane, 111 N.J. 293, 303, 544 A.2d 826, 831 (1988). Here, the witnesses and the defendant's rendition of what transpired vary greatly. The defendant is entitled to appropriate consideration in the charge of defendant's version of the facts. Cf. State v. Martin, 119 N.J. 2, 16-17, 573 A. 2d *556 1359, 1366-67 (1990) (holding that when a defendant proposes a divergent version of the fact at trial, the judge must provide the jury with instruction consistent with those facts in order for the jury to properly consider which factual scenario it believes). "At a minimum, the trial judge must charge the jury ... that if the jury believes defendant's version of the facts, defendant must be acquitted." State v. Freeman, 324 N.J.Super. 463, 469, 735 A.2d 1195, 1199 (App.Div.1999). This is precisely what was accomplished here by the trial judge. The jury considered and passed upon a defense which was rooted in the testimony after proper instructions by the court.
In the instant case, the strategy employed by the defense was that he "did not shoot anyone", and that the death was caused by misadventure. This strategy was logical albeit unsuccessful. To second guess whether a course chosen by defendant's counsel was the best strategy, or even a good one, is not the role of a reviewing court, so long as the defendant was afforded meaningful representation. State v. Buonadonna, 122 N.J. 22, 39, 583 A.2d 747, 756 (1991). As to the issue of causation, the trial judge did specifically instruct the jury that "causing the death or serious bodily injury must be within the design or contemplation of the defendant". (Trans. Sept. 21, 1984, p. 35; I. 8-10). Moreover, even assuming arguendo the absence of any specific instruction on the subject, it is evident that "the jury could not fail to realize...that if it should believe defendant's tale of an accidental shooting, it was bound to return a not guilty verdict". State v. Reyes, supra, 50 N.J. at 464-65, 236 A.2d at 390-91.
The evidence submitted to the jury was more than sufficient to establish the defendant's guilt beyond a reasonable doubt. The arguments offered to overturn the conviction are unfounded and the application for such a remedial measure is untimely. Accordingly, the defendant/petitioner's present application for post-conviction relief is denied.
SO ORDERED.
NOTES
[1] Unpublished opinions do not constitute precedent and are not binding upon any court. R. 1:36-3. Moreover, they should not be cited by any court. Ibid; Newark Insurance Company v. Acupac Packaging, Inc., 328 N.J.Super. 385, 394 fn. 4, 746 A.2d 47, 52 fn. 4 (App.Div.2000). It is axiomatic that an unpublished Appellate Division opinion has no stare decisis effect and cannot, therefore, be regarded as signaling the clarification or change of law. Higgins v. Swiecicki, 315 N.J.Super. 488, 491, 719 A.2d 166, 168 (App. Div.1998). Moreover, for the reasons to be discussed, the cited case is distinguishable from the current case.