697 A.2d 529

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MOISES AFANADOR, DEFENDANT–APPELLANT.

Argued April 28, 1997—Decided July 23, 1997.

42

*Lawrence S. Lustberg* argued the cause for appellant (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *Mr. Lustberg* and *Mark A. Berman,* on the brief).

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

*State v. Alexander*, 136 *N.J.* 563, 643 *A.*2d 996 (1994), held that in order to convict one as a drug kingpin under *N.J.S.A.* 2C:35–3, a jury should be instructed that it must find that a defendant held an "upper echelon" or "high level" role as leader of a drug trafficking network. The principal issues in this appeal are (1) whether the principles of *Alexander* should apply retroactively to a case tried before that decision, (2) whether defendant's petition seeking post-conviction relief from his conviction as a kingpin on the basis of *Alexander* is procedurally barred, and (3) whether such relief is warranted.

I

The facts are set forth in our prior opinion involving defendant. *State v. Afanador*, 134 *N.J.* 162, 631 *A.*2d 946 (1993) (*Afanador I* ). Defendant engaged in four drug transactions with an undercover detective. In the first three transactions, a total of $3,100 was exchanged for cocaine. The fourth transaction involving a $10,000 buy was not completed because of defendant's arrest.

Other people participated in the transactions. Defendant's nephew "Popo" was involved in the first transaction during which defendant spoke of having $2,300 "on the street" owed to him as a result of his "business." Popo directed cars from defendant's driveway and performed other tasks. In addition, a woman was dispatched to find a scale to weigh the drugs. In the second transaction, defendant's wife directed the detective to the back of the house and to the basement, where defendant was located. Defendant described himself to the undercover detective as being in the drug business. After removing the cocaine from an empty lightbulb box and completing the transaction, defendant "free-based" some cocaine. In the third transaction, Popo, Johnny Montalvo, Pedro Ortiz, and one "Cholo" were involved. Defendant was overheard telling another drug dealer "it was in," presumably referring to a drug shipment. In the fourth transaction, defendant's uncle, Osualdo Acobes, served as a courier and assisted with

weighing the drugs while a person named "Nando" counted the money and arranged delivery with the detective. This time defendant said he "had $27,000 on the street." There were other background facts and circumstances, including discussions of larger sums of money and drugs. Defendant contended, however, that such discussions were initiated by the undercover agent and that he, Afanador, was merely the go-between for the undercover agent and the sellers. These facts sustained defendant's 1988 conviction as a drug kingpin. In March 1989, the trial court sentenced defendant to two consecutive terms of life imprisonment, each with a twenty-five year period of parole ineligibility. Defendant asserted that use of one of the factors, defendant's involvement in organized crime, constituted inappropriate double counting.

On appeal, defendant, through prior counsel and his supplemental *pro se* submission, challenged the constitutionality of the kingpin statute, the excessiveness of the sentence, and the competency of his trial counsel. In 1991, the Appellate Division rejected defendant's challenges to the constitutionality of the kingpin statute. It also dismissed the ineffective assistance of counsel claim. The court, however, remanded the sentence for reconsideration of the two consecutive life terms imposed. The Appellate Division found the sentence troubling because of "defendant's obvious mid-to-low level position on the pyramid of potential kingpin targets."

On remand in May 1992, the trial court reduced defendant's sentence for being a drug kingpin to one term of life imprisonment, with thirty years of parole ineligibility. Other sentences were made concurrent. In September 1992, we granted defendant's *pro se* petition for certification. The petition asserted, in addition to other challenges, that the jury charge was not consistent with the legislative intent of the drug kingpin statute because the charge had not required a finding that defendant was an upper-echelon member of a drug network. Pursuant to this Court's request that defendant be assigned *pro bono* counsel, present counsel began representing Afanador in October 1992. In

November 1992, the Court amended the Order granting certification and limited our review to the statute's constitutionality, facially or as applied. 130 *N.J.* 601, 617 *A.*2d 1222 (1992).

In October 1993, this Court held that the drug kingpin statute was not void for vagueness. *Afanador I, supra,* 134 *N.J.* 162, 631 *A.*2d 946. The dissenting members of the Court agreed that the statute was facially constitutional. *Id.* at 180, 631 *A.*2d 946. They reasoned:

> The words of the statute, such as "organizer," "supervisor," "financier," or "manager," are indeed familiar and easily understandable. Although such terms are not vague in themselves, the trial court's failure to relate the terms of the statute to the statutory purposes leaves the jury without the guidance necessary to assess whether the defendant is in fact an "upper-echelon" member of a drug-trafficking network, as was intended by the Legislature for enhanced punishment. Absent instructions relating the general terms of the Act to its purposes, a defendant does not receive a fair trial.
>
> [*Ibid.*]

Because the question of a proper instruction was pending consideration by the Court in *State v. Alexander,* 264 *N.J.Super.* 102, 624 *A.*2d 48 (App.Div.1993), the majority in *Afanador I* explicitly deferred review of the jury charge issue until *Alexander* was before the Court. *Afanador I, supra,* 134 *N.J.* at 178–79, 631 *A.*2d 946. In November 1993, we granted certification in *Alexander* to resolve the jury charge issue. 134 *N.J.* 564, 636 *A.*2d 522 (1993). Afanador's counsel submitted an *amicus curiae* brief and argued in that capacity in favor of Alexander's challenge to the jury instruction.

In July 1994, we held that trial courts must instruct juries in a manner consistent with the intent of the Legislature. *Alexander, supra,* 136 *N.J.* at 565, 643 *A.*2d 996. We held that courts should instruct a jury that to meet the definition of a kingpin, a defendant's position and status must be at a superior level in relation to others in the network and that the defendant has exercised in that capacity supervisory power or control over others engaged in organized drug-trafficking. *Id.* at 574, 643 *A.*2d 996.

In December 1994, six months after our decision in *Alexander,* defendant sought post-conviction relief (PCR) in part on the basis

of improper jury instructions. The original trial judge held a hearing on the petition in August 1995, but died before he could render a decision. The matter was transferred to another judge. Although the State raised the procedural bars of *Rules* 3:22–4, –5, and –12, the trial court concluded that the interests of justice warranted relaxation of the rules. Because trial counsel had failed to object to or to propose a revision to the instruction, the court concluded that the error in the jury charge could not be raised on post-conviction relief. The court further held that *Alexander* announced a new rule of law that should not be applied retroactively. The trial court dismissed other claims of ineffective assistance of counsel and use of perjured testimony because defendant failed to submit a *prima facie* showing to warrant an evidentiary hearing.

The Appellate Division affirmed the dismissal substantially for the same reasons as the trial court. In addition, the Appellate Division held that the PCR petition was barred under *Rules* 3:22–4 and –5 because all issues either could have been or were raised on direct appeal. The court also held that the PCR petition was time barred under *Rule* 3:22–12 because it was not filed within five years of defendant's conviction. We granted defendant's petition for certification. 147 *N.J.* 578, 688 *A.*2d 1053 (1997).

## II

Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. *State v. Preciose,* 129 *N.J.* 451, 459, 609 *A.*2d 1280 (1992) (citing Pressler, *Current N.J. Court Rules,* *Rules* 3:22–1 to –22 (1992)). It is a safeguard to ensure that a defendant was not unjustly convicted. *State v. McQuaid,* 147 *N.J.* 464, 482, 688 *A.*2d 584 (1997). Ordinarily, PCR enables a defendant to challenge the legality of a sentence or final judgment of conviction by presenting contentions that could not have been raised on direct appeal. *Id.* at 482–83, 688 *A.*2d 584.

Pursuant to *Rule* 3:22–2, a defendant may seek PCR on four grounds:

(a) substantial denial in the conviction proceedings of a defendant's state or federal constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and (d) any habeas corpus, common-law, or statutory grounds for collateral attack.

[*Preciose, supra,* 129 *N.J.* at 459, 609 *A.*2d 1280 (quotations omitted).]

PCR, however, is neither a substitute for direct appeal, *Rule* 3:22–3, nor an opportunity to relitigate matters already decided on the merits, *Rule* 3:22–5. *Preciose, supra,* 129 *N.J.* at 459, 609 *A.*2d 1280; see also State v. Mitchell, *126* N.J. *565, 583, 601* A.*2d 198 (1992). Further, PCR cannot be used to circumvent issues that could have, but were not raised on appeal, unless the circumstances fall within one of three exceptions. R. 3:22–4. In addition, a PCR petition challenging a judgment or conviction is time barred ·if not filed within five years of the act in question. R. 3:22–12.*

We have emphasized the importance of the procedural bars. *Mitchell, supra,* 126 *N.J.* at 583, 601 *A.*2d 198. Both the *Rules* and their exceptions should be conscientiously applied to the unique circumstances of each case with due respect for both the rule and any exception. *Id.* at 589, 601 *A.*2d 198; *see also R.* 1:1–2 (allowing relaxation of *Rules* in specifically alleged circumstances of injustice). "However, when meritorious issues are raised that require analysis and explanation, our traditions of comprehensive justice will best be served by decisions that reflect thoughtful and thorough consideration and disposition of substantive contentions." *Preciose, supra,* 129 *N.J.* at 477–78, 609 *A.*2d 1280.

■ The first procedural hurdle is *Rule* 3:22–4, which essentially bars all grounds for PCR that could have been raised in a prior proceeding. The *Rule* provides:

Any ground for relief not raised in a prior proceeding ... is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted *could not reasonably have been raised in any prior proceeding;* or (b) that enforcement of the *bar* would result in *fundamental injustice;* or (c) that denial of relief would be *contrary to the Constitution* of the United States or the State of New Jersey.

[*R.* 3:22–4 (emphasis added).]

The problem with invoking *Rule* 3:22–4 in these circumstances is that defendant sought to raise the issue of the instruction in his

direct appeal to this Court, but we denied certification on that issue. *Afanador I, supra,* 134 *N.J.* at 178, 631 *A.*2d 946. In his *pro se* petition, defendant explicitly raised the issue of the adequacy of the jury charge. His brief stated: "The Model Jury Charge [as applied in the original trial was] *fatally flawed in that it [was] not totally consistent with the legislative intent for the prosecution and conviction of a crime under that statute.*" We do not know precisely what assigned counsel would have argued because we denied him the opportunity to do so. Less than one month after the decision in *Afanador I,* we granted certification on the jury instruction issue. *Alexander, supra,* 134 *N.J.* 564, 636 *A.*2d 522. In short, because of our ruling, assigned counsel could not reasonably have raised the *Alexander* issue until defendant's direct appeal had been exhausted.

The next question is whether defendant should be barred by *Rule* 3:22–5, which precludes PCR on issues previously adjudicated. *Rule* 3:22–5 provides:

> A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.

[*R.* 3:22–5.]

Under *Rule* 3:22–5, prior adjudication of an issue, including a decision on direct appeal, will ordinarily bar a subsequent post-conviction hearing on the same basis. PCR will be precluded "*only if* the issue is identical or substantially equivalent" to the issue already adjudicated on the merits. *McQuaid, supra,* 147 *N.J.* at 484, 688 *A.*2d 584 (quoting *Picard v. Connor,* 404 *U.S.* 270, 276–77, 92 *S.Ct.* 509, 512–13, 30 *L. Ed.*2d 438, 444 (1971) (emphasis added)). Although the constitutionality of the drug kingpin statute and the jury instruction claims were intertwined, only the former was adjudicated in *Afanador I.* Defendant is not attempting to relitigate any issue, but instead is seeking to apply to his case the principle of law that we declined to consider in *Afanador I.*

In short, *Rule* 3:22–5 does not bar defendant's jury instruction claim. This Court precluded adjudication of the issue when it limited its grant of certification. 130 *N.J.* 601, 617 *A.*2d 1222 (1992).

The third procedural hurdle is *Rule* 3:22–12, which provides:

A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule *more than 5 years* after rendition of the judgment or the sentence sought to be attacked *unless* it alleges facts showing that the delay beyond said time was due to defendant's *excusable neglect.*

[(Emphasis added).]

In the context of post-conviction relief, a court should only relax the bar of *Rule* 3:22–12 under exceptional circumstances. The court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an "injustice" sufficient to relax the time limits. *Mitchell, supra,* 126 *N.J.* at 580, 601 *A.*2d 198. Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay. *Ibid.* As time passes, justice becomes more elusive and the necessity for preserving finality and certainty of judgments increases. *Id.* at 576, 601 *A.*2d 198; *see also State v. D.D.M.,* 140 *N.J.* 83, 657 *A.*2d 837 (1995) (holding seven and eleven year delays in filing PCR sentencing claims excessive absent compelling circumstances); *McQuaid, supra,* 147 *N.J.* at 497, 688 *A.*2d 584 (holding unjustifiable defendant's request for PCR seven years after guilty plea from which defendant gained substantial benefit does not demonstrate manifest injustice pursuant to *Rule* 3:21–1).

Under *Rule* 3:22–12, the five-year period tolls according to whether a defendant is challenging the conviction or the sentence. *State v. Dugan,* 289 *N.J.Super.* 15, 19, 672 *A.*2d 1240 (App.Div.), *certif. denied,* 145 *N.J.* 373, 678 *A.*2d 714 (1996). Defendant was convicted in 1988 and sentenced in 1989. Resentencing occurred in 1992. Because defendant is challenging the conviction, the State argues that he is precluded by *Rule* 3:22–12. There was no occasion for defendant to file a PCR petition during the four years

and seven months in which he was exhausting his direct appeal. No court could have entertained PCR while his direct appeal was pending. Realistically, the PCR clock did not begin to run until October 1993 when we affirmed *Afanador I*. Less than one month later, we granted certification in *Alexander*. Afanador's counsel argued the issue of the jury instruction in *Alexander* in January 1994. The State could not have been relying on the finality of the judgment in *Afanador I* in such circumstances.

After *Alexander* was decided in July 1994, *pro bono* counsel undertook, without assignment, to represent Afanador in his PCR application. He filed his petition in December 1994. At oral argument before the trial court in April 1995, defense counsel countered the five-year bar by asserting that the PCR petition could be filed within five years of the resentencing that occurred in May 1992. This calculation would bring defendant within the five year range. The law is otherwise. *Dugan, supra,* 289 *N.J.Super.* 15, 672 *A.*2d 1240.

Although we are somewhat troubled by the six-month delay after *Alexander* before defendant filed his PCR petition, *pro bono* counsel had to review the record on the other issues in order to prepare a petition. Moreover, defendant had sought to raise the jury instruction issue within the five-year period. Defendant was caught in a Catch–22 situation. For four years and seven months, as long as he pursued a direct appeal, Afanador could not raise the issue on PCR. Nor was he able, because of our ruling, to raise the issue before us. As the Appellate Division observed, "[the Supreme Court] effectively foreclosed defendant, who did everything within his power to preserve the issue, from obtaining relief from us. Any further relief must come from the Supreme Court."

To allow Alexander but not Afanador to benefit from the Court's resolution of the jury instruction issue that Afanador sought to challenge in his August 1992 *pro se* petition would be unjust. Consequently, we hold that defendant's PCR petition is not procedurally barred. We turn now to the merits of the PCR claim.

III

A.

*The Plain Error Issue*

 An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions. *State v. Martin*, 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990). Correct jury instructions are "at the heart of the proper execution of the jury function in a criminal trial." *Alexander, supra,* 136 *N.J.* at 571, 643 *A.*2d 996.

 Because defendant did not object to the challenged instruction, he waived the right to challenge the instruction on appeal. *R.* 1:7–2. A reviewing court may reverse on the basis of unchallenged error only if it finds plain error clearly capable of producing an unjust result. *R.* 2:10–2. Plain error, in the context of a jury charge, is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." *State v. Jordan,* 147 *N.J.* 409, 422, 688 *A.*2d 97 (1997). Erroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error. *State v. Brown,* 138 *N.J.* 481, 522, 651 *A.*2d 19 (1994).

In *Alexander*, we held that an instruction under the kingpin statute must include more than the statutory language. *N.J.S.A.* 2C:35–3 provides:

(1) that the defendant conspired with at least two others; (2) that the defendant was an organizer, supervisor, financier, or manager; (3) that the defendant engaged in a conspiracy for profit; and (4) that the conspiracy included a scheme or course of conduct unlawfully to manufacture, distribute, dispense, or transport a controlled dangerous substance.

[*Alexander, supra,* 136 *N.J.* at 568, 643 *A.*2d 996.]

In order to achieve the Legislature's intent to target only the most culpable, upper-echelon drug offenders, we reasoned that trial courts should convey to the jury that the "status or position of the

defendant should be considered a material element of the crime."
*Id.* at 570, 643 *A.*2d 996. Status or position can be determined by
examining factors such as the seriousness of the offense and the
role of the actor in the drug network. *Id.* at 569, 643 *A.*2d 996
(citing *N.J.S.A.* 2C:35–1).

There are two requirements for a proper *Alexander*
charge. *Id.* at 574–75, 643 *A.*2d 996. First, a court should
instruct the jury that a defendant's position and status should be
at a superior or higher level than others involved in the drug
trafficking network. *Id.* at 574, 643 *A.*2d 996. To be an "upper-
echelon" leader, the accused must exercise supervisory control or
power over others engaged in the organized drug-trafficking
network. *Ibid.* Second, the jury instruction "should also amplify
*other* statutory terms that are expressed as *material* elements of
the crime under [the drug kingpin statute]." *Id.* at 575, 643 *A.*2d
996 (emphasis added). Terms such as "organizer, supervisor,
financier, or manager" should be explained so that the jury may
fully understand their meaning and significance in relation to the
statute. *Ibid.* The Court recommended the following as possible
explanations:

> [T]he court might define "organizer" as a person who arranges, devises, or plans a
> drug-trafficking network; a "supervisor" as one who oversees the operation of a
> drug-trafficking network; a "financier" as one who is responsible for providing the
> funds or resources necessary to operate a drug-trafficking network; and a "manag-
> er" as one who directs the operations of a drug-trafficking network.

> [*Ibid.*]

The *Afanador I* jury charge tracked the language of the 1988
Model Jury Charge, which stated without amplification the words
of the kingpin statute. The charge did not explain that the jury
must find that defendant's status as an "upper-echelon" leader of
the network was an essential element of the offense. Nor did the
instructions amplify the terms of the statute. Only the statutory
language was read to the jury. Terms such as "organizer, super-
visor, financier, or manager" were not defined in the jury charge
in a manner consistent with *Alexander.*

In assaying the effect of the trial court's failure to charge the jury correctly under the drug kingpin statute, we ordinarily recognize that the failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel. *State v. Federico,* 103 *N.J.* 169, 176, 510 *A.*2d 1147 (1986) (citing *State v. Grunow,* 102 *N.J.* 133, 506 *A.*2d 708 (1986); *State v. Collier,* 90 *N.J.* 117, 447 *A.*2d 168 (1982); *State v. Green,* 86 *N.J.* 281, 430 *A.*2d 914 (1981)). Thus, in *State v. Butler,* the Court reversed a felony-murder conviction because the trial court failed to instruct the jury on the elements of the underlying robbery felony. 27 *N.J.* 560, 143 *A.*2d 530 (1958). In *Butler,* Justice Francis explained:

> To fail to define the offense attributed to the accused and the essential elements which constitute it, is to assume that jurors are educated in the law—an assumption which no one would undertake to justify.... Accordingly, we hold the view that a mandatory duty exists on the part of the trial judge to instruct the jury as to the fundamental principles of law which control the case. Among such principles is the definition of a crime, the commission of which is basic to the prosecution against the defendant. And the duty is not affected by the failure of a party to request that it be discharged.
>
> [*Id.* at 595, 143 *A.*2d 530.]

The *Afanador* trial court failed to instruct the jury concerning the "fundamental principles of law" governing the case. The State argues that the jury was made aware by counsel of defendant's arguments that he was not an upper-echelon leader, and thus any error in the instruction was harmless. However, arguments of counsel cannot substitute for correct instructions of law. The trial judge is the most authoritative figure in the courtroom. Jurors naturally look to the judge for definition of the offenses charged. This is not a case in which the instructions were merely capable of improvement. *See State v. Delibero,* 149 *N.J.* 90, 106, 692 *A.*2d 981 (1997). They were incorrect. The "equivocal" nature of the evidence, *Afanador I,* 134 *N.J.* at 178, 631 *A.*2d 946, was such that a correctly charged jury could have reasonably concluded that defendant was not a kingpin. We therefore hold that the absence of an *Alexander* instruction constituted plain error capable of bringing about an unjust result.

## B.

### *The Retroactivity Issue*

We now consider whether the requirements of the *Alexander* jury instruction should be applied retroactively. New Jersey's retroactivity analysis is generally consistent with that of the United States Supreme Court, although federal precedent is somewhat more restrictive. *State v. Cupe*, 289 *N.J.Super.* 1, 10, 672 *A.*2d 1233 (App.Div.) (noting federal courts' reluctance to apply a law retroactively on collateral, rather than direct review), *certif. denied*, 144 *N.J.* 589, 677 *A.*2d 761 (1996). Just last term, we reviewed again our principles of retroactivity analysis. *State v. Knight*, 145 *N.J.* 233, 678 *A.*2d 642 (1996). We restate them here.

In deciding whether to give a decision retroactive effect, there are several options available to the Court, ranging from complete retroactivity to complete prospectivity. *See Cupe, supra,* 289 *N.J.Super.* at 12, 672 *A.*2d 1233 (enumerating the four options). However, before the Court chooses from among the varied options, it customarily engages in the threshold inquiry of whether the rule at issue is a "new rule of law" for purposes of retroactivity analysis. *Id.* at 11, 672 *A.*2d 1233. Our cases have recognized that if a ruling does not involve a "departure from existing law," the retroactivity question never arises and our power to limit the retroactive effect of a decision is not implicated. *State v. Burstein*, 85 *N.J.* 394, 403, 427 *A.*2d 525 (1981).

In executing the Legislature's intent *Alexander* did not promulgate a new rule of law. *State v. Burgess*, 298 *N.J.Super.* 254, 267, 689 *A.*2d 730 (App.Div.1997). In *Alexander*, the Court clarified ambiguities in the statute. 136 *N.J.* at 574, 643 *A.*2d 996. As stated by Justice Handler for the Court,

[a]n instruction that makes explicit the implicit elements of the crime does not involve rewriting the statute or redefining, modifying, amending, or adding to the substantive elements prescribed by the statute because that instructional definition conforms to the legislative intent and carries out that intent.

[*Ibid.*]

 For a new rule to evolve, there must be a "sudden and generally unanticipated repudiation of a long-standing practice." *Cupe, supra,* 289 *N.J.Super.* at 12, 672 *A.*2d 1233. There must be some "appreciable past from which the rule departs." *Burgess, supra,* 298 *N.J.Super.* at 268, 689 *A.*2d 730. The 1988 Model Jury Charge is not considered a long-standing practice for purposes of the reliance argument. *Burgess, supra,* 298 *N.J.Super.* at 270, 689 *A.*2d 730 (noting unofficial nature of Model Jury Charges generally and ambiguous statutory construction of kingpin statute weaken reliance argument). Prior to *Afanador I,* no decision of this Court addressed the sufficiency of kingpin instructions.

In addition, the Court's language in *Alexander* did not bespeak an intent to formulate a new rule. *State v. Reed,* 133 *N.J.* 237, 627 *A.*2d 630 (1993) (promulgating new rule for questioning suspects in custody). In *Reed,* the Court used phrases such as "we enunciate," "we announce today," and "future judicial inquiry" at least five times to demonstrate its intention to create a new rule. *Id.* at 265–67, 627 *A.*2d 630. *Alexander* contains no similar language; the decision made explicit elements of the kingpin offense that were implicit in the statute but had not been properly charged to the jury. Thus, *Alexander* did not create a new rule of law.

*Knight* continued to explain:

If a decision indeed sets forth a "new rule," three factors generally are considered to determine whether the rule is to be applied retroactively: "(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice." *State v. Nash,* 64 *N.J.* 464, 471, 317 *A.*2d 689 (1974).... Although those three factors have received detailed attention in our retroactivity case law, our cases also indicate that the retroactivity determination often turns more generally on "the court's view of what is just and consonant with public policy in the particular situation presented." *Nash, Id.* at 64 *N.J.* at 469, 317 *A.*2d 689.

"The first factor, the purpose of the new rule, is often the pivotal consideration." *Burstein, supra,* 85 *N.J.* at 406, 427 *A.*2d 525. For example, if the newly announced rule is an exclusionary rule intended solely to discourage police misconduct, then the rule's purpose would not be served by applying the rule to conduct occurring before the rule was announced. For that reason, exclusionary rules are rarely given retroactive effect. *Ibid.* On the other hand, if the old rule was altered because it substantially impaired the reliability of the truth-finding process, the

interest in obtaining accurate verdicts may suggest that the new rule be given complete retroactive effect. *Id.* at 406–07, 427 *A.*2d 525.

[145 *N.J.* at 251, 678 *A.*2d 642.]

The purpose of the *Alexander* rule is to provide clear instructions to a jury so that society will be protected from the most invidious drug conspiracies and that the accused who is not a kingpin will not suffer unjustly the severe penalties for that offense. *Burgess, supra,* 298 *N.J.Super.* at 269, 689 *A.*2d 730. Because the *Alexander* rule fosters the "reliability of the truth-finding process," the first *Nash* factor suggests complete retroactive effect.

The next question is whether the second factor, past reliance, should outweigh the first factor. The drug kingpin statute was enacted in 1987. The Model Jury Charge was adopted in October 1988. Afanador was tried in December 1988 and sentenced in 1989. There was no definitive case law regarding the jury instruction prior to *Alexander.* Thus, past reliance is not a strong argument for precluding retroactive application.

The third factor, the administration of justice, does not appear sufficient to outweigh the first factor. *See Burgess, supra,* 298 *N.J.Super.* at 269–70, 689 *A.*2d 730 (discussing potential effect of retrospective application of *Alexander*). We were informed at oral argument that 18 of the 29 drug kingpin convictions extant were the result of guilty pleas. Those pleas may have established unequivocal status as a drug kingpin. Relief from such pleas would not be warranted. *McQuaid, supra,* 147 *N.J.* 464, 688 *A.*2d 584. Consequently, even if the *Alexander* rule were thought to be a new rule, it would be applied retroactively.

IV

To summarize, as in *Burgess, supra,* "chronology is critical to our reasoning." 298 *N.J.Super.* at 257, 689 *A.*2d 730. Defendant did raise the jury instruction issue within five years of his conviction. His petition for certification expressly sought relief on the grounds later determined in *Alexander.* However, in *Afanador I*

the Court denied certification on that issue. Because defendant was denied certification on this issue, it was never adjudicated in his case. Defendant's petition for post-conviction relief is not procedurally barred by *Rules* 3:22–4, –5, or –12.

The Court's decision in *Alexander* does not constitute a new rule of law and should be applied retroactively to defendant's case. The erroneous jury instructions were sufficiently prejudicial to defendant to warrant a new trial on the kingpin count.

We affirm the judgment of the Appellate Division concerning the claims of ineffective assistance of counsel and use of perjurious testimony.

### V

We reverse the judgment of the Appellate Division denying post-conviction relief on the drug kingpin count and remand that charge to the Law Division for further proceedings consistent with this opinion. This does not mean that defendant will be released to the streets to continue in the drug trade. He remains convicted of the remaining counts including a charge of possession of controlled dangerous substances with an intent to distribute. Defendant is subject to an extended sentence for that offense. *N.J.S.A.* 2C:43–7(c); *N.J.S.A.* 2C:43–6(f); *see State v. Rodriguez,* 97 *N.J.* 263, 478 *A.*2d 408 (1984) (discussing effect of partial reversal on merged sentences).

*For reversal and remandment*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*For affirmance*—None.