**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0969-18T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAMES T. JOHNSON,

      Defendant-Appellant.

_____

Argued March 3, 2020 – Decided March 30, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 17-09-2650 and 17-09-2652.

Cody Tyler Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Cody Tyler Mason, of counsel and on the briefs).

Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Barbara A. Rosenkrans, of counsel and on the brief).

PER CURIAM

Defendant James T. Johnson appeals his conviction following a guilty plea, for second-degree burglary in violation of N.J.S.A. 2C:18-2(a)(1), and fourth-degree contempt, in violation of N.J.S.A. 2C:29-9(b)(1) claiming the factual basis for his guilty plea was inadequate. We agree, and reverse and remand. Given our disposition, we need not reach the additional point defendant raises.[1]

I.

We discern the following facts from the record. On January 25, 2017, a final restraining order (FRO) pursuant to the New Jersey Prevention of Domestic Violence Act[2] was issued and served upon defendant. The FRO directed defendant not to have contact with M.S.,[3] his ex-girlfriend, and mother of four of his children.

On April 3, 2017, defendant went to his sister's house in Newark, where he knew M.S. and their four children lived, to retrieve a speaker. Defendant

---

[1] Defendant also contends the trial court erred when it denied his motion to withdraw his plea under Rule 3:3-9(e).

[2] N.J.S.A. 2C:25-17 to -35.

[3] We use initials to protect the identity of the victim and her family. R. 1:38-3(c)(12).

A-0969-18T4

admitted he wanted to "chide" M.S. and "egg her" on. M.S. arrived at the residence as defendant was leaving. The two became embroiled in a verbal altercation. Defendant threatened to harm and inflict bodily injury upon M.S.

On September 26, 2017, defendant was charged with fourth-degree contempt, N.J.S.A. 2C:29-9(b) under Indictment No. 17-09-2650. On the same date, defendant was charged with second-degree burglary, N.J.S.A. 2C:18-2, and third-degree terroristic threats, N.J.S.A. 2C:12-3(a), under Indictment No. 17-09-2652.

On July 5, 2018, after jury selection, defendant pled guilty to second-degree burglary and fourth-degree contempt. In exchange for defendant's guilty plea, the State agreed to recommend a four-year prison sentence, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and to dismiss the other charges. At the outset of the plea colloquy, the prosecutor detailed the terms of the agreement:

> This is . . . a global offer. I'll begin with indictment 17-09-[02652]. Pursuant to that indictment Mr. Johnson will be pleading guilty to count one of that indictment as charged. It's a second[-]degree burglary in violation of [N.J.S.A.] 2C:18-2[(a)]1. All other counts of that indictment are to be dismissed.
>
> With respect to indictment 17-09-[02650] Mr. Johnson will be pleading guilty to count one of that single count

A-0969-18T4

indictment. It's a fourth[-]degree contempt in violation of [N.J.S.A.] 2C:29-9[(b)]1.

All other counts to be dismissed. . . . The State's . . . recommendation is four years in the New Jersey State Prison with eighty[-]five percent parole ineligibility. We're also requesting no contact with the victim in this matter.

Defense counsel voiced her concurrence with the recitation of the plea agreement. Defendant was then questioned about his understanding of the plea:

[Defense Counsel]: Mr. Johnson[,] I'd like to draw your attention back to April 3[], 2017. On that day were you in the City of Newark in the County of Essex?

[Defendant]: Yes, ma'am.

[Defense Counsel]: Now, on that day you had an ongoing relationship with a woman named [M.S.]; correct?

[Defendant]: Yes, ma'am.

[Defense Counsel]: And [M.S.] you actually have four children with her, at least three for sure; right?

[Defendant]: Yes, ma'am.

[Defense Counsel]: And on that day you went over to . . . [ ] Hunterdon Street which is a residence that does not belong to you; correct?

[Defendant]: Yes, ma'am.

[Defense Counsel]: [The house on] Hunterdon Street as far as you knew belonged to your sister . . . ; right?

4

[Defendant]: [My sister]. Yes, ma'am.

[Defense Counsel]: [Your sister]. Now, [your sister] also had [M.S.] . . . living with her at the time and your four children; correct?

[Defendant]: Yes, ma'am.

[Defense Counsel]: And so you went over there to get a speaker and also you knew when you went over there that [M.S.] had been living there with [your sister]; correct?

[Defendant]: Yes, ma'am.

. . . .

[Defense Counsel]: So, now when you went to [the house on] Hunterdon Street you went there knowing that you weren't supposed to be there because [M.S.] was going to be there; correct?

[Defendant]: Yes, ma'am.

[Defense Counsel]: And you went in there anyway and the reason why you weren't supposed to be near [M.S.] . . . is because there was a restraining order on you, a[n] [FRO] directing you not to go anywhere within fifty feet or a hundred feet . . . , anywhere in her vicinity; correct?

[Defendant]: Yes, ma'am.

[Defense Counsel]: And you knew that and you went there anyway; right? Because that --

[Defendant]: Yes, ma'am.

5

[Defense Counsel]: Was something you wanted to do and also really to kind of egg her, and just kind of chide her . . . to just be who you wanted to be?

[Defendant]: Yes, ma'am.

[Defense Counsel]: Okay. So, you had no license to go into that location, you did not belong there, they did not give you permission to go to that location. You went there knowing [M.S.] was going to be there and that she'd be upset by your presence; is this correct?

[Defendant]: Yes, ma'am.

[Defense Counsel]: So you entered into this . . . property with the intent to really violate a contempt order; right?

[Defendant]: Yes, ma'am.

[Defense Counsel]: You knew you had a restraining order against you at the time?

[Defendant]: Yes, ma'am.

. . . .

[Defense Counsel]: Now, during the course of your being there . . . the kids were there, [M.S.] wasn't even there when you got there; right . . . ?

[Defendant]: Yes.

[Defense Counsel]: But, as you were leaving [M.S.] pulls up; right?

[Defendant]: Yes.

[Defense Counsel]: And [M.S.] then begins hollering and screaming at your . . . wife who's in the car with your child; right?

[Defendant]: Yes, ma'am.

[Defense Counsel]: And at some point you got furious with her and she was furious with you and you threatened her; correct?

[Defendant]: Yes, ma'am.

        . . . .

[Defense Counsel]: [D]uring the course of the burglary [M.S.] comes up and then while . . . you're in the house when you know you're not supposed to be, you get into a verbal altercation with [M.S.]?

[The court]: Okay . . . .  [A]nd in the course of that physical or verbal altercation did you threaten to hurt her?  To inflict bodily injury on [M.S.]?

[Defendant]: Yes, ma'am.

        . . . .

[Assistant Prosecutor]: Mr. Johnson[,]I know you said you went to the property, you actually went inside the house; is that correct?

[Defendant]: Yes, sir.

[Assistant Prosecutor]: Okay.  And you knew that you didn't have any permission to be inside that house; is that right?

[Defendant]: Yes, sir.

. . . .

[Defense Counsel]: [H]e was aware that on April 3[] there was a[n] [FRO]. He was not supposed to be within . . . I think it's five hundred and fifty feet of [M.S.] he went to that address knowing she was going to be there or reasonably anticipating it because his four kids were there.

[The court]: And you understand that and you agree to that; correct . . . ?

[Defendant]: Yes, ma'am.

The court then questioned defendant directly about his understanding of the plea. Defendant acknowledged the information in the plea form was accurate, he had the opportunity to review the State's discovery, and he was satisfied with his attorney's services. The trial court was satisfied defendant provided a sufficient factual basis and accepted the plea.

On September 12, 2019, defendant moved to withdraw his guilty plea under State v. Slater, 198 N.J. 145 (2009), claiming M.S. did not reside at his sister's residence and that he had a restraining order against M.S., barring her from contacting him or going to his sister's residence. On September 28, 2019, the trial court heard oral argument on defendant's motion. The court denied the motion finding that M.S. had not been served with defendant's restraining order until approximately six weeks after the incident, and even if she had been served

with defendant's restraining order, it did not invalidate her FRO against him. Additionally, the court found that defendant made a "very strategic move" by pleading guilty and limiting his sentencing exposure by almost two-thirds because "right before trial[, defendant] knew exactly what the State's strengths were."

After denying defendant's motion on September 28, 2019, the trial court sentenced defendant in accordance with the plea agreement. On the fourth-degree contempt charge, the court sentenced defendant to a prison term of one-year and six months. On the second-degree burglary charge, the court sentenced defendant to a prison term of four years, subject to NERA. The sentences were to run concurrent to each other. The court also imposed fines and penalties.

On October 31, 2018, defendant filed a notice of appeal. On May 7, 2019, we heard the appeal on the Excessive Sentencing Calendar (ESOA). On May 7, 2019, we affirmed the trial court's sentence stating that the issues on appeal related solely to the sentence imposed, which we concluded was not manifestly excessive or unduly punitive, and did not constitute an abuse of discretion.

Thereafter, defendant filed a petition for certification before our Supreme Court. On October 2, 2019, the Court granted defendant's petition and

A-0969-18T4

summarily remanded the matter to us for briefing on the plenary calendar. State v. Johnson, 239 N.J. 507 (2019).

Defendant presents the following argument on appeal:[4]

POINT I

THE FACTUAL BASIS DID NOT ESTABLISH THAT DEFENDANT IS GUILTY OF BURGLARY. THE PLEA IS THUS INVALID AND REVERSAL IS REQUIRED.

Defendant argues the factual basis for his plea was insufficient because his admissions and the available record do not support his guilty plea for second-degree burglary under N.J.S.A. 2C:18-2(a)(1).

II.

The State argues that defendant waived his challenge to the adequacy of the factual basis elicited for his guilty plea because defendant did not raise the issue below. The State notes "[i]t is a well-settled principle that . . . appellate courts will decline to consider questions or issues not properly presented to the

---

[4] The remaining point raised in defendant's brief, which we are not deciding, is:

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA UNDER RULE 3:3-9(e).

trial court when an opportunity for such a presentation is available . . . ."  Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973).  Notwithstanding that principle, we have routinely considered challenges to the sufficiency of the factual basis for a defendant's guilty plea where the issue was not previously raised below.  See State v. Urbina, 221 N.J. 509, 527-28 (2015); State v. S.C., 289 N.J. Super. 61, 65 (App. Div. 1996) (considering, on direct appeal, a challenge to the adequacy of a factual basis for a guilty plea); State v. Campfield, 213 N.J. at 218, 224 (213) (addressing the sufficiency of a factual basis on direct appeal).

In fact, while a defendant "most commonly" challenges the adequacy of the factual basis for a guilty plea "by way of a motion to the trial court to withdraw that plea, or on post-conviction relief, . . . a defendant may also challenge the sufficiency of the factual basis for his guilty plea on direct appeal."  Urbina, 221 N.J. at 527-28 (internal citations omitted) (citing State v. Slater, 198 N.J. 145, 157 (2009); State v. D.D.M., 140 N.J. 83, 95 (1995); State v. Butler, 89 N.J. 220, 224 (1982)).  Here, defendant raised this issue before us during the ESOA hearing, therefore, he did not waive his right to challenge the sufficiency of the factual basis for his plea.

We consider de novo whether "the factual admissions during a plea colloquy satisfy the essential elements of an offense."  State v. Gregory, 220

11

N.J. 413, 420 (2015); State v. Tate, 220 N.J. 393, 403-04 (2015). "[A] person cannot be punished for violating a criminal statute unless he has been convicted at trial or he has admitted his guilt through the entry of plea." Tate, 220 N.J. at 405. "[A]t a plea hearing, a judge must be satisfied that the defendant has given a factual account that makes him guilty of the crime." Ibid. (citing R. 3:9-2).

When taking a guilty plea, a court is required to adhere to the procedure set forth in Rule 3:9-2, which provides in pertinent part:

> The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea . . . .

A court must be satisfied an adequate factual basis for the plea exists. Campfield, 213 N.J. at 230. Each element of the offense to which a defendant pleads guilty must be addressed during the plea colloquy. Id. at 231 (citing State ex rel. T.M., 166 N.J. 319, 333-34 (2001); State v. Sainz, 107 N.J. 283, 293 (1987); Pressler & Verniero, Current N.J. Court Rules, cmt. 1.3.2. on R. 3:9-2 (2020)). "The factual foundation may take one of two forms; defendant may either explicitly admit guilt with respect to the elements or may 'acknowledge [ ] . . . facts constituting the essential elements of the crime.'" Ibid. (citing Sainz, 107 N.J. at 293).

Regardless which of the two forms is used to establish a factual foundation, "[t]he trial court 'must be satisfied from the lips of the defendant that he committed the acts which constitute the crime.'" Ibid. (quoting T.M., 166 N.J. at 327); State v. Barboza, 115 N.J. 415, 422 (1989) (citation omitted). The court may question others if they have relevant knowledge, see Pressler & Verniero, cmt. 1.3.2. on R. 3:9-2, but ultimately the court must hear directly from a defendant an admission of guilt on the elements of the crime or an acknowledgement of facts constituting the essential elements of the crime, see State v. Pineiro, 385 N.J. Super. 129, 137 (App. Div. 2006).

A proper factual basis must contain an "acknowledgement of facts that meet 'the essential elements of the crime.'" Tate, 220 N.J. at 406 (quoting T.M., 166 N.J. at 333). The essential elements of second-degree burglary require the State to prove that defendant (1) entered a structure without permission; (2) had a "purpose to commit an offense therein"; and (3) in the course of committing the offense, "purposely, knowingly or recklessly inflict[ed], attempt[ed] to inflict or threaten[ed] to inflict bodily injury on anyone . . . ." Model Jury Charges (Criminal), "Burglary in the Second Degree (N.J.S.A. 2C:18-2(b))" (rev. Mar. 14, 2016); N.J.S.A. 2C:18-2(b).

"It is sufficient for purposes of the burglary statute that the offense intended to be committed within the structure constitutes a crime of the fourth degree." State v. Marquez, 277 N.J. Super. 162, 168 (App. Div. 1994) (citing State v. Williams, 229 N.J. Super. 179, 183 (App. Div. 1988)). However, having the purpose to "commit contempt of court by intrusion into the premises would . . . not satisfy the criminal purpose requirement for burglary." Id. at 169. A defendant "could only be convicted of burglary if his purpose upon entry . . . was to commit a separate offense subsequent to his entry." Ibid.

Moreover, "the Legislature could [not] have intended that every entry which violates a domestic violence restraining order, without other requisite elements, constitutes the crime of burglary." Ibid. And, "the word 'therein' is included within the statute 'to make it clear that the mere purpose to commit criminal trespass by intrusion into the premises does not satisfy the criminal purpose requirement for burglary.'" Ibid. (citation omitted).

An indispensable element of N.J.S.A. 2C:18-2 is that a defendant specifically intended to enter a structure without permission with a purpose to commit an offense after entering. Although defense counsel questioned defendant at the plea hearing about going to his sister's house to get a speaker, knowing M.S. would be there, defendant never admitted he intended to commit

the offense of burglary at the time of entry, a crucial omission. "'[M]ere entry into [a residence] in violation of a domestic violence restraining order [i]s itself [not] a sufficient basis to convict [defendant] of burglary' because burglary requires proof of purpose to commit an offense once inside." State v. Robinson, 289 N.J. Super. 447, 455 (App. Div. 1996) (fourth and fifth alterations in original) (quoting Marquez, 277 N.J. Super. at 169). Therefore, defendant's intent upon entering his sister's residence in violation of his restraining order cannot sustain his conviction for burglary.

Indeed, defendant's plea colloquy only established that he entered the residence "with the intent to . . . violate a contempt order" and without permission to enter the residence. Moreover, defendant's plea colloquy is devoid of any facts that the speaker belonged to someone else, or that defendant had the intent to deprive another of the use of the speaker.

We also note that the record also fails to support that defendant had the purpose to terrorize M.S. A person is guilty of terroristic threats if "he threatens to commit any crime of violence with the purpose to terrorize another" or "he threatens to kill another with the purpose to put [her] in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out." N.J.S.A. 2C:12-3(a) to

15

(b).  "Subsection (a) requires proof of a purpose to terrorize another; subsection (b) requires proof of a purpose to put the other in imminent fear of death."  State v. Conklin, 394 N.J. Super. 408, 412-13 (App. Div. 2007).  "Proof of terroristic threats . . . [is] measured by an objective standard."  Cesare v. Cesare, 154 N.J. 394, 402 (1998).

Defendant admitted going to his sister's residence to "chide" M.S. and threaten to hurt or inflict bodily injury upon M.S. during their verbal altercation.  But defendant himself never stated he had a purpose to terrorize M.S. or put her in "imminent fear of death."  Conklin, 394 N.J. Super. at 412-13; see also N.J.S.A. 2C:12-3(b).

As during the plea colloquy defendant failed to admit to all of the elements of second-degree burglary or acknowledge facts constituting the essential elements of the crime, there is an inadequate factual basis to his plea.  Accordingly, the plea, the judgment of conviction, and the sentence are vacated.  The dismissed charges are reinstated, and defendant shall be allowed to re-plead or proceed to trial.  Campfield, 213 N.J. at 237 (citing Barboza, 115 N.J. at 420).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0969-18T4