**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2908-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DORIAN J. ROBERTS, a/k/a
DORIAN ROBERTS, and
DORIAN JAY ROBERTS,

     Defendant-Appellant.

_____

Submitted September 30, 2025 – Decided October 22, 2025

Before Judges Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 02-12-4070.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Dorian J. Roberts appeals from a January 31, 2024 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Because the petition was untimely and defendant failed to demonstrate exceptional circumstances warranting relaxation of the five-year time bar under Rule 3:22-12(a)(1), we affirm.

I.

The facts underlying defendant's convictions are summarized in our prior unpublished opinion affirming the denial of his motion to correct an illegal sentence. State v. Roberts (Roberts II), No. A-0270-19 (App. Div. Mar. 1, 2022) (slip op. at 2). Pertinent to this appeal, in September 2003, defendant pled guilty to: first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), as amended from first-degree murder, for the shooting death of Stephen Holland in the home Holland shared with his girlfriend, Beverly Harper; and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), as amended from second-degree attempted murder, for "chas[ing] or push[ing] . . . Harper into the bathroom" and "fir[ing] a round, . . . graz[ing] the temple of her head."

Defendant was nineteen years old when he committed the offenses. Pursuant to the terms of the "open" plea agreement, "[b]oth parties reserve[d the] right to ask for any lawful sentence."

On November 21, 2003, defendant was sentenced to a twenty-five-year prison term on the manslaughter conviction and a consecutive ten-year prison term on the aggravated assault conviction. Both sentences were imposed subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. The sentencing judge, who also was the plea judge, found aggravating factors one ("nature and circumstances of the offense"), two ("gravity and seriousness of harm inflicted on the victim"), three (risk of re-offense), and nine (general and specific deterrence), N.J.S.A. 2C:44-1(a)(1), (2), (3), and (9), clearly outweighed mitigating factor twelve (cooperation with law enforcement), N.J.S.A. 2C:44-1(b)(12).[1]

In his fourteen-page written statement of reasons accompanying the judgment of conviction, the judge closely tracked his oral pronouncement of sentence. Relevant to the issues raised on this appeal, the judge cited our Supreme Court's decision in State v. Sainz, 107 N.J. 283, 293 (1987), and noted the sentencing court "should consider 'the whole person'[] and all the circumstances surrounding the commission of the crime." Referencing Rule 3:21-2, the court considered the information contained in the presentence report

---

[1] In our prior opinion, we mistakenly stated the sentencing judge found no mitigating factors. Roberts II, slip op at 3. The error neither impacted the issues raised in that nor this appeal.

A-2908-23

(PSR), including Harper's statements, and further noted a "defendant's factual version need not be the sole source of information for the [c]ourt's sentencing decision." See Sainz, 107 N.J. at 293.

In applying aggravating factor one, the sentencing judge considered the totality of defendant's conduct:

> In this case, defendant's role was paramount. He alone shot the victims, and later repeatedly stabbed one of them. The circumstances show that the senseless death of . . . Holland and the brutal assault of . . . Harper essentially were the product of defendant's cold-blooded nature. [Harper stated] defendant entered their home, chased . . . Holland through the kitchen, the dining room, and into the living room, as . . . Holland attempted to flee. . . . Holland was gunned down by . . . defendant, just short of the front door. Not satisfied with merely wounding . . . Holland, defendant callously fired one more shot into . . . Holland as he crawled to the front door, killing him. This was a brutal and senseless killing. . . . Holland was gunned down and killed because he still owed defendant $5. Then, after brutally and senselessly killing . . . Holland, defendant chased . . . Harper into her bathroom and shot her in the head. Fortunately, the gunshot wound . . . Harper sustained was not fatal. However, . . . Harper did lose consciousness because of that wound. When she finally regained consciousness, defendant attacked her again, stabbing her nine times with a screwdriver. She was told not to leave and was left for dead. Defendant shot . . . Harper in the head after she crawled out from under her own kitchen table and tried to barricade herself in the bathroom. He kicked the bathroom door in and fired his last shot at her, grazing her head and causing her to lose consciousness. When she awoke, she tried to

A-2908-23

escape to the safety of her bedroom, but defendant attacked her a second time. He beat and stabbed her and left her for dead in her bedroom. On his way out of her home, he threatened her and barricaded her bedroom door to prevent her from seeking assistance. As a final act, it appears that he cut the phone cord on his way out.

In his assessment of aggravating factor two, the judge cited the harm defendant inflicted on Harper. The judge reasoned:

> Harper was chased into her bathroom and shot in the head. Because she survived that gunshot wound, defendant brutally attacked her a second time, stabbing her nine times with a screwdriver and threatening to kill her if she left her home or reported the crimes. The gunshot would [sic] clearly rendered . . . Harper incapable of exercising normal physical or mental power of resistance. Moreover, the injuries defendant inflicted on . . . Harper, coupled with her witnessing defendant kill . . . [Holland indicate] defendant reasonably should have known that . . . Harper was also particularly vulnerable and incapable of resistance. Defendant also used excessive force and inflicted gratuitous bodily injuries upon . . . Holland. He had already shot . . . Holland, and after doing so, he callously fired one more shot into . . . Holland, while the victim was crawling to the front door.

In his ensuing direct appeal, defendant only challenged his sentence. We heard his appeal on a sentencing calendar, see R. 2:9-11, and affirmed. State v. Roberts (Roberts I), No. A-3920-03 (App. Div. Sept. 23, 2004).

A-2908-23

More than two decades later, in April 2018, defendant filed a motion to correct an illegal sentence under Rule 3:21-10(b), and the matter was heard by another judge. Roberts II, slip op. at 4. In Roberts II, we summarized the issues raised in defendant's motion:

> Defense counsel urged the judge to reconsider defendant's sentences, noting they were "at the top of the . . . range" and should be reexamined because when defendant was sentenced in 2003, the judge relied on a paradigm rooted in presumptive prison terms, a practice that was eliminated under State v. Natale, 184 N.J. 458, 487 (2005). Defense counsel stated that based on the Court's holding in Natale, defendant's sentences were "per se, illegal."
>
> [Ibid.]

The motion judge disagreed and denied relief. Ibid.

In his appeal that followed, defendant abandoned his illegal sentence argument and belatedly urged us to remand for retroactive application of the then recent mitigating factor fourteen (defendant was less than twenty-six years old when the offense was committed), N.J.S.A. 2C:44-1(b)(14). We rejected defendant's reprised argument and affirmed. Roberts II, slip op. at 11.

Shortly thereafter, in July 2021, defendant filed the present pro se PCR petition and brief. Defendant argued the sentencing court: failed to advise him of the deadline for filing a PCR petition; erroneously imposed consecutive

sentences; and misapplied aggravating factor two by considering defendant stabbed Harper when that conduct was not proven beyond a reasonable doubt. Defendant also reprised his argument that the matter must be remanded for resentencing for application of mitigating factor fourteen. Defendant's assigned counsel filed an amended petition and brief asserting defendant's PCR petition was not time- or procedurally barred and the sentencing court improperly considered evidence that was not "adjudicated through due process" contrary to the Court's decision in State v. Melvin, 248 N.J. 321 (2021).

During oral argument on his petition, defendant personally addressed the PCR judge. Relevant to his contention that his petition was timely, defendant explained, in pertinent part, but verbatim:

> I looked at so many sentences reports where as though when the judge says you have forty-five days to appeal this decision, then you have up to five years to file your first PCR. I looked at so many of my -- the people that I was locked -- it's in there for everybody else. In mines, it's not there. For the time-bar, I think that I've been doing everything I can do, that I was told to do. I'm pretty sure in this time if it was -- if I would have known that a PCR -- that the judge told me to do, I'd a did it. . . .
>
> If I had that option at that time, I definitely would have did it. I wouldn't have wasted no five-year time not doing one step. That was an important step. And to say that it can be time-barred just because somebody didn't tell me, I would have did it. . . . I did everything,

7

illegal sentence motions, a motion direct. Everything. I did everything forty-five days. I did everything in the right time. This is one thing that I wasn't even told . . . .

Immediately thereafter, the same judge, who denied defendant's motion for an illegal sentence, denied PCR. Initially, the judge stated he was unsure whether, at the time of defendant's sentencing, "the case law required" the court to advise of the time limits for filing a PCR petition. The PCR judge acknowledged the sentencing judge did not do so here, but found that issue was "not before [him]." The PCR judge concluded defendant failed to file a timely petition. Turning to the merits of his claim, the judge found the Court's decision in Melvin inapplicable in the context of a PCR claim.

Defendant now raises the following points for our consideration:

POINT I

THE PCR JUDGE ERRED IN IMPOSING A PROCEDURAL BAR.

POINT II

THE PCR JUDGE ERRED IN REJECTING THE ARGUMENT THAT [DEFENDANT]'S SENTENCE MUST BE VACATED BECAUSE THE SENTENCING JUDGE IMPROPERLY RELIED ON EVIDENCE OF AN OFFENSE TO WHICH [DEFENDANT] HAD NOT ADMITTED.

Unpersuaded, we affirm.

A-2908-23

## II.

"We review a judge's decision to deny a PCR petition without a hearing for abuse of discretion." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023). However, when a PCR judge does not hold an evidentiary hearing, we review de novo the factual inferences drawn by the judge from the record and the judge's legal conclusions. See State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013).

Rule 3:22-12(a)(1) provides a PCR petition shall not be filed "more than [five] years after the date of entry . . . of the judgment of conviction that is being challenged" unless the defendant "alleges facts showing that the delay . . . was due to [the] defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true[,] enforcement of the time bar would result in a fundamental injustice." In State v. Brown, 455 N.J. Super. 460, 470 (App. Div. 2018), we recognized the PCR court's "independent, non-delegable duty to question the timeliness of the petition, and to require that defendant submit competent evidence to satisfy the standards for relaxing the rule's time restrictions pursuant to Rule 3:22-12."

"In the context of [PCR], a court should only relax the bar of Rule 3:22-12 under exceptional circumstances." State v. Afanador, 151 N.J. 41, 52,

9

(1997).  Those circumstances include:  "the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits."  Ibid. (quoting State v. Mitchell, 126 N.J. 565, 580 (1992)).  "Absent sufficient competent evidence to satisfy this standard, the court does not have the authority to review the merits of the claim."  Brown, 455 N.J. Super. at 470.

A substantial delay in filing a PCR petition increases the already substantial burden on the defendant to demonstrate excusable neglect and a fundamental injustice will result if the petition is not heard.  See Afanador, 151 N.J. at 52 (holding "the burden to justify filing a petition after the five-year period will increase with the extent of the delay").  A defendant's lack of sophistication in the law does not establish excusable neglect.  State v. Murray, 162 N.J. 240, 246 (2000).

In point I, defendant acknowledges ignorance of the law does not constitute excusable neglect, but nonetheless claims he satisfied Rule 3:22-12's standard because he was not advised of the five-year time-bar at sentencing. Defendant maintains he did not "s[i]t on his rights" after his conviction and "did everything he knew of . . . to challenge the sentence imposed, all within a timely manner."

Although it is undisputed defendant was not advised of his PCR rights at sentencing, it is not clear from the record when he realized the omission. Regardless, however, the parties have not cited, and our independent research has not revealed, any authority concluding a petitioner satisfied excusable neglect where he or she was not advised of the right to PCR relief at sentencing. Ignorance of the legal principles does not constitute excusable neglect. See Murray, 162 N.J. at 246; see also State v. Dugan, 289 N.J. Super. 15, 22 (App. Div. 1996) (holding the defendant's misunderstanding "that Rule 3:22-12 gave him five years after entry of the amended judgments of conviction to file his petition" did not constitute excusable neglect).

Moreover, when defendant was sentenced in November 2003, the trial court was not required to advise of the right to PCR. See Pressler & Verniero, Current N.J. Court Rules, History and Analysis of Rule Amendments to R. 3:21-4(i), note 9, www.gannlaw.com (2026).[2] We therefore conclude defendant's

---

[2] As the comment to paragraph (i) explains:

> This paragraph of the rule was amended effective September 2009 as part of the overall revisions of the post-conviction rules then adopted. The amendment, which included amendment of the caption, requires the court to advise the defendant not only of the right to appeal but also of the time limits imposed by R[ule]

ignorance of the time limitation for filing a PCR petition does not constitute an exceptional circumstance warranting relaxation of the time requirements under Rule 3:22-12(a)(1).

In his first point, defendant also argues the "importance" of his claim constitutes excusable neglect because the sentencing judge improperly considered defendant stabbed Harper – conduct not admitted during his plea allocution – in assessing aggravating factors one and two. By extension, in his second point, defendant argues "[t]his issue is cognizable on PCR because it is based upon substantial denial of [defendant]'s constitutional rights, R. 3:22(a)," and was not authorized by law, R. 3:22(c). To support his argument, defendant asserts Melvin should be applied retroactively to his 2003 sentencing. We are not convinced.

"[A] truly 'illegal' sentence can be corrected 'at any time.'" State v. Acevedo, 205 N.J. 40, 47 n.4 (2011) (quoting R. 3:21-10(b)(5)). Our Supreme

3:22-12 for filing a petition for post-conviction relief. The significance of that advice results from the 2009 amendment of R[ule] 1:3-4(c) adding the time limits of R[ule] 3:22-12 as non-enlargeable. It remains to case law to determine if failure of the required advice will toll the running of those time limits.

[(Emphasis added).]

A-2908-23

Court has recognized "two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law." State v. Hyland, 238 N.J. 135, 145 (2019). Both categories are narrowly defined. Ibid. The second category "includes a sentence 'imposed without regard to some constitutional safeguard.'" State v. Zuber, 227 N.J. 422, 437 (2017) (quoting State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996)). "Whether [a] defendant's sentence is unconstitutional is . . . an issue of law subject to de novo review." State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016); see also State v. Pomianek, 221 N.J. 66, 80 (2015).

Notwithstanding defendant's contentions, the present matter is not analogous to the circumstances at issue in Melvin. In that case, the trial court made factual findings at sentencing that contradicted the jury's verdict. 248 N.J. at 326. In particular, the defendant was acquitted of first-degree murder, but the court determined the evidence adduced at trial established he was the shooter. Ibid. We affirmed and our Supreme Court reversed, id. at 353, finding the improper consideration of acquitted conduct violated due process and fundamental fairness, id. at 347-49. The Court elaborated:

> [F]indings of juries cannot be nullified through lower-standard fact findings at sentencing. The trial court, after presiding over a trial and hearing all the evidence, may well have a different view of the case than the jury.

13

> But once the jury has spoken through its verdict of acquittal, that verdict is final and unassailable.
>
> [Id. at 352.]

Conversely, here, the sentencing judge did not consider facts related to acquitted conduct to enhance defendant's sentence. Instead, in assessing aggravating factors one and two, the judge considered defendant's factual basis and the information contained in his PSR, after plea counsel confirmed the defense "ha[d] no additions or corrections to make to it." In doing so, the judge properly relied on Rule 3:21-2 and the Court's decision in Sainz.

Moreover, the Melvin Court was silent as to the retroactive application of its new rule. In State v. Morente-Dubon, we held the new rule of law announced by the Melvin Court "should have at least pipeline retroactivity, 'rendering it applicable in all future cases, the case in which the rule [was] announced, and any cases still on direct appeal.'" 474 N.J. Super. 197, 213 (App. Div. 2022) (alteration in original) (quoting State v. Cummings, 184 N.J. 84, 98 (2005)); see also R. 3:22-4(b)(2)(A) (a PCR petition "rel[ying] on a new rule of constitutional law" must be "made retroactive to a defendant's petition by the [Supreme Courts of the United States or New Jersey]").

Having considered defendant's contentions in view of the controlling legal principles, we discern no reason to disturb the PCR judge's conclusion that

14

defendant's July 2021 PCR petition – filed more than a decade beyond the five-year-time bar, <u>Rule</u> 3:22-12, – was time-barred.  We conclude, as did the PCR judge, defendant failed to present sufficient competent evidence to establish excusable neglect.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division