**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1990-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRIAN WILSON,
a/k/a BRIAN W. WILSON,
PAUL MCKNIGHT, and
PAULMCKNIGHT,

     Defendant-Appellant.

_____

Submitted November 17, 2021 – Decided December 9, 2021

Before Judges Hoffman, Whipple and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 02-11-2454.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Cary Shill, Acting Atlantic County Prosecutor, attorney for respondent (Mario C. Formica, Special Deputy Attorney General/Acting Deputy First Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following his 2012 conviction of reckless manslaughter, defendant filed a pro se petition for post-conviction relief (PCR). The PCR court denied defendant's petition without an evidentiary hearing. Defendant now contends that his trial and appellate counsel provided ineffective assistance in violation of his Sixth Amendment rights. Defendant bases his claim on trial and appellate counsel's failure to pursue the trial court's alleged erroneous inclusion of jury instructions for lesser charges of aggravated manslaughter and reckless manslaughter, in addition to murder. We affirm.

I.

Having already considered and affirmed defendant's conviction and sentence, we recite the facts as summarized in State v. Wilson, No. A-5607-12 (App. Div. June 25, 2015) (slip op.) (Wilson II). In 1984, defendant and William Parker lived in New York City. Whenever Parker would visit Atlantic City, he would stay at his grandmother's house. On occasion, defendant would accompany Parker to Atlantic City. On August 11, 1984, Parker's cousin, Derrick Ingram, was shot in the back in Atlantic City and spent over a month in a hospital recovering from his injuries.

A-1990-18

On September 13, 1984, Parker, defendant, and Jeffrey Simpson visited Ingram in the hospital. Parker was angry that Ingram had been shot and upset that someone sold his mother narcotics that had made her ill. Ingram testified that Parker, defendant, and Simpson believed Zebedee Newmones was present when Ingram was shot and was also responsible for giving Parker's mother the narcotics.

Ingram testified that the three men discussed killing Newmones. That night, Richard Barber visited Parker at his grandmother's house. At the time, Barber was driving a red Renault Alliance, which he had borrowed from his girlfriend.

Around 3 a.m., Barber, Parker, and Simpson left Parker's grandmother's house to go to a local bar. Barber drove. On their way to the bar, Parker observed Newmones walking with Rodney McNair. Parker asked Barber to turn around and drive back to his grandmother' s apartment. Parker then got on a bicycle and told Barber and Simpson to meet him at the Lincoln Hotel. At the hotel, Parker and defendant got into the car and Barber drove back to the area where they had seen Newmones. Barber parked the car, where he remained in the car while Parker, defendant, and Simpson walked toward the area where they had seen Newmones.

A-1990-18

Barber recalled defendant saying that he would be "taking care of Zebedee Newmones."  Shortly thereafter, Barber heard approximately five gunshots. Parker, Simpson, and defendant ran up the street and returned to the car.

Barber testified that defendant was carrying a Smith and Wesson .38 caliber gun under his clothing.  The three men told Barber to drive.  As they drove away, defendant said, "I got him, I unloaded the gun on him . . . .  [I] shot him in the face."  Parker added,  [T]hat's good, that was for my cousin[.]"

Pamela Lamb testified that, during the early morning hours of September 14, 1984, she observed Newmones, McNair, and Michael Bailey outside a bar at the corner of Arctic and Kentucky Avenues.  Lamb knew Newmones because he was the father of her sister's children.  Lamb testified that she gave Newmones two cigarettes and she went back inside the bar.  Moments later, she heard a commotion out on the street and left the bar.  She followed a crowd toward Indiana and Arctic where she saw Newmones lying on the ground.  Lamb recalled that Newmones had been shot in the shoulder and it looked like "his bottom lip was shot off."

At approximately 4 a.m., officers of the Atlantic City Police Department were traveling in a marked police car in the area of Arctic Avenue when they were flagged down by McNair, who reported that someone had just been shot.

4

One police officer ran down toward Indiana Avenue and found Newmones, bleeding from his mouth and back. Newmones was transported to the hospital, where he died.

Later that morning, Tracy Vance, Barber's sister, saw defendant bicycling near her apartment. Defendant approached Vance, asked her to hold a "piece" for him, and said that he would be "right back to get it." She agreed, and defendant gave her a large gun. Shortly thereafter, Vance learned that Newmones had been shot and became concerned that the gun she was holding might have been used in the shooting. She called Barber for help.

Barber testified that he went to Vance's apartment, where she showed him the .38 caliber Smith and Wesson in her closet. Barber believed that this was the same gun that defendant had in the car on the night of the shooting. Barber took the gun from Vance's home and threw it in the bay.

That same morning, Ingram received a call from Simpson, who told him that they killed Newmones. That afternoon, Parker and defendant visited Ingram at the hospital. During this visit, defendant told Ingram that they found Newmones and that defendant had "shot him in the face" and "tried to blow his [fucking] head off."

A-1990-18

Timothy Bunch, a friend of Newmones, testified that, after Newmones was killed, he was playing basketball when defendant pulled up in a car driven by Parker. Defendant told Bunch he had "shot [Newmones] in the eyes." Bunch observed defendant carrying a .38 caliber firearm in his waistband.

Although an arrest warrant was initially issued in 1984 for defendant in the name "Brian Doe," he was not arrested until October 21, 2002, in New York. A 2004 trial resulted in a hung jury. A second trial resulted in a mistrial. A third trial in 2006 resulted in a murder conviction. We reversed this conviction in September 2009 due to discovery violations and the failure of the trial judge "to instruct the jury as to lesser-included offenses." State v. Wilson, No. A-4588-05 (App. Div. September 1, 2009) (slip op.) (Wilson I). In December 2012, after a fourth trial, a jury convicted defendant of reckless manslaughter but acquitted him of murder and aggravated manslaughter. At defendant's fourth trial, he testified that he was "probably" in Atlantic City in September of 1984, but he denied involvement in the shooting. He also denied speaking to Bunch about the shooting, visiting Ingram in the hospital, owning or carrying a .38 caliber handgun, or giving a handgun to Vance. On March 1, 2013, the trial court sentenced defendant to ten years imprisonment. On appeal, we affirmed defendant's conviction. Wilson II, slip op. at 17.

In May 2016, defendant filed a pro se petition for PCR. In November 2018, Judge Patricia M. Wild denied the petition, after hearing oral argument. This appeal followed, with defendant raising the following argument:

> POINT I
>
> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL AND APPELLATE COUNSELS' INEFFECTIVENESS FOR FAILING TO PURSUE THE ERRONEOUS INCLUSION OF JURY INSTRUCTIONS AS TO LESSER-INCLUDER MANSLAUGHTER CHARGES; IN THE ALTERNATIVE, THIS MATTER MUST BE REMANDED FOR THE PCR COURT TO ADDRESS THIS CLAIM.

II.

Defendant contends that his trial and appellate counsel provided ineffective assistance of counsel by failing to challenge the trial judge's decision to charge the jury as to the lesser-included charges of aggravated manslaughter and reckless manslaughter. Defendant asserts that if the jury instructions for the lesser included offenses had not been given, there was a reasonable probability that he would have been found not guilty. This argument lacks merit.

PCR is New Jersey's analogue to the federal writ of habeas corpus. State v. Afanador, 151 N.J. 41, 49 (1997); State v. Preciose, 129 N.J. 451, 459 (1992).

7

It is the vehicle through which a defendant may, after conviction and sentencing, challenge a judgment of conviction by raising issues that could not have been raised on direct appeal. State v. McQuaid, 147 N.J. 464, 482 (1997). Pursuant to Rule 3:22-2(a), a criminal defendant is entitled to PCR if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution[s] of the United States and . . . the State of New Jersey." A defendant must establish the denial of such a right by a "preponderance of the credible evidence." Preciose, 129 N.J. at 459. "To sustain that burden," a defendant must articulate "specific facts" that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish a prima facie case of ineffective assistance of counsel, defendant must show: (1) counsel's performance was objectively deficient; and (2) counsel's deficient performance prejudiced defendant to the extent that he was deprived of his right to a fair trial. State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the United States Supreme Court's two-prong test from Strickland v. Washington, 466 U.S. 668, 687 (1984)). Prejudice means "a reasonable probability" the deficient performance "materially contributed to defendant's conviction." Ibid.

A-1990-18

The first prong of <u>Strickland</u> requires that a petitioner show that counsel's performance was deficient as measured by an objective standard of reasonableness. <u>Strickland</u>, 46 U.S. at 687-88. This objective standard is measured according to a standard of reasonable competence, which does not mandate "the best of attorneys but certainly not one so ineffective as to make the idea of a fair trial meaningless." <u>State v. Davis</u>. 116 N.J. 341, 351 (1989).

Moreover, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690. Consequently, a petitioner must identify specific acts or omissions of counsel that fall outside reasonable professional judgment. <u>Ibid</u>. The court then decides whether these acts fell "outside the wide range of professional competent assistance." <u>Ibid</u>.

Complaints of matters relating to trial strategy will not establish a valid ineffective assistance claim. <u>Fritz</u>, 105 N.J. at 54 (quoting <u>State v. Williams</u>, 39 N.J. 471, 489 (1963)). Mere improvident strategy, mistakes or bad tactics will not amount to ineffective assistance. <u>State v. Bonet</u>, 132 N.J. Super. 186, 191 (App. Div. 1975). A strategy that does not work, which seems ill-conceived to a defendant in hindsight, must be examined through the lens of the time it was undertaken. <u>Strickland</u>, 466 U.S. at 689.

9

This court uses a deferential standard of review in reviewing a PCR court's factual findings based on live testimony so long as they are supported by "sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (quoting State v. Nash, 212 N.J. 518, 540 (2013)).  However, this court affords no deference to a PCR court's interpretation of the law and applies a de novo standard.  State v. Harris, 181 N.J. 391, 415-16 (2004).  "[F]or mixed questions of law and fact, [this court] give[s] deference . . . to the supported factual findings of the trial court, but review[s] de novo the lower court's application of any legal rules to such factual findings."  Ibid. (internal citation omitted).

Trial and appellate counsel did not render constitutionally ineffective assistance of counsel.  Defendant cannot satisfy the either prong of the Strickland/Fritz test.

Trial counsel's decision to withhold objection to the court's including instructions for aggravated manslaughter and reckless manslaughter appears wise, both in-the-moment and in hindsight.  Importantly, several witnesses had testified that defendant admitted killing Newmones before the court instructed the jury.  It is thus well within the "wide range of professional competence" to allow the jury to consider a lesser crime of manslaughter when the state has presented a strong case for murder.  Strickland, 466 U.S. at 690.

A-1990-18

The record does not indicate that defendant requested appellate counsel raise the lesser-included crimes instruction on appeal. Had defendant prevailed on this issue on appeal, he may have received another new trial. Another new trial without a jury instruction on the lesser-included crimes of aggravated manslaughter and reckless manslaughter would have exposed defendant to liability for murder. Given the numerous witnesses who testified that defendant admitted to killing Newmones, appellate counsel's decision not to raise the trial court's instruction on aggravated manslaughter and reckless manslaughter on direct appeal was an objectively reasonable exercise of professional judgment. Defendant's argument that appellate counsel rendered ineffective assistance of counsel clearly lacks merit.

Nor can defendant satisfy the second prong of the Strickland/Fritz test. As noted, several witnesses testified that defendant admitted to killing Newmones by "[shooting] him in the face." Barber testified that defendant admitted to "unloading the gun on [Newmones]." Tracy Vance testified that defendant asked her to hide the suspected murder weapon. Timothy Bunch testified that defendant admitted to "[shooting Newmones] in the eyes." Ingram testified that he, Parker, and defendant discussed killing Newmones the night before the shooting.

11

The conduct of trial counsel (in not objecting to lesser included offenses) and the conduct of appellate counsel (in not pursuing such a claim on direct appea1) cannot be viewed as ineffective, as defendant asserts; instead, the record clearly reflects "strategic choices made after thorough investigation of law and facts relevant to plausible options," rendering the conduct of trial and appellate counsel "virtually unchallengeable." Strickland, 466 U.S. at 690-91.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1990-18